**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| POTELCO, INC., | DIVISION ONE |
| Appellant, | No. 73226-9-I |
| v. | PUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | |
| Respondent. | FILED: June 13, 2016 |

DWYER, J. — Potelco, Inc., appeals two citations issued by the Department of Labor and Industries pursuant to the Washington Industrial Safety and Health Act of 1973[1] (WISHA). Because substantial evidence supports the Board of Industrial Insurance Appeals' findings that Potelco failed to establish an equipotential zone, that this failure was not the result of unpreventable employee misconduct, and that Potelco failed to enforce its accident prevention program in a manner that was effective in practice, we affirm.

I

Potelco is a utility contractor that installs and maintains high voltage transmission lines. In March 2011, Potelco was working on a de-energized high voltage line in the Sedro-Woolley area. For approximately 25 miles, a second

---

[1] Ch. 49.17 RCW.

high voltage line, about 30 feet away, ran parallel to the de-energized line. The proximity of the lines made it possible for the de-energized line to become charged by electricity from the live line by induction. The induction hazard was especially great because the lines ran parallel for such a great distance.

To reduce the induction hazard, Potelco planned to "cut air" into the de-energized line before work began. This would involve breaking the de-energized line into sections to reduce the length of line that could become energized through induction.

The Department's safety standards for electrical workers require the creation of an equipotential zone (EPZ) before working on de-energized transmission lines. WAC 296-45-345(3). An EPZ protects workers from hazardous differences in electrical potential, thereby protecting them from electrocution and death. Potelco's accident prevention program also required that workers establish an EPZ.

Gavin Williams was the foreperson of the Sedro-Woolley project crew. As the foreperson, Williams was responsible for enforcing safety rules at the work site. Potelco authorized him to stop work and to discipline employees who broke safety rules. In fact, Williams had the authority to terminate employees for safety violations.

On the first day of the project, Potelco assigned the crew to work on a section of the line near two transmission poles. Potelco made no arrangements to notify the crew when air had been cut into the de-energized line. The crew was not told to await notification before beginning work.

The crew did not create an EPZ before beginning work on the line. Williams knew that the crew had not established an EPZ. Wanting to impress his superiors and feeling pressured to work quickly, Williams nevertheless allowed work to begin.

Potelco did not cut air into the de-energized transmission line before work began. The line became charged with dangerous electrical energy. As crew members began to lower the line to the ground, Williams tried, but failed, to secure the line. When he could not capture it, Brent Murphy, a crew member, tried to grab it. Upon touching the line, Murphy suffered serious electrical shock injuries.

The Department cited Potelco for failing to create an EPZ and for failing to effectively enforce its accident prevention program.[2] The Department classified these violations as serious. Potelco appealed to the Board. Potelco argued that its failure to create an EPZ resulted from unpreventable employee misconduct, that it effectively enforced its safety program in practice, and that the cited violations were not serious because it could not have known of the violations, even in the exercise of reasonable diligence.

At the subsequent hearing, crew members from the Sedro-Woolley project testified about Potelco's safety program. They explained that a foreperson or general foreperson would usually warn workers of impending site inspections, which allowed employees to avoid being caught breaking safety rules. Potelco

---

[2] The citation for failure to establish an EPZ was issued as citation 1-2, a violation of WAC 296-45-345(3). The citation for failure to effectively enforce an accident prevention program was issued as citation 1-1b, a violation of WAC 296-800-14025.

workers routinely violated safety regulations, but the company rarely disciplined employees, even when a foreperson observed the violations. A Potelco safety coordinator also testified that Potelco did not usually document verbal warnings issued to employees, even though failure to do so violated Potelco's written disciplinary policy and undermined the prescribed progressive discipline scheme.

The Board rejected Potelco's unpreventable employee misconduct defense to the EPZ violation. It found that Potelco did not take adequate steps to discover and correct safety violations. The Board also found that Potelco did not effectively enforce its written safety program in practice. Likewise, relative to the second citation, the Board found that Potelco did not effectively enforce its accident prevention program. Finally, the Board determined that the violations were properly classified as serious, thereby rejecting Potelco's assertion that it did not know (and could not have known) of the violations.

Potelco appealed to the superior court. The superior court affirmed, finding that substantial evidence supported the Board's decision.

II

Potelco contends that the citation it received for failing to establish an EPZ should be vacated because the violation was the result of unpreventable and unforeseeable employee misconduct. This is so, Potelco asserts, because Williams and his crew ignored specific instructions from Potelco when they began work without first establishing an EPZ. We disagree.

WISHA governs our review of a Board decision. RCW 49.17.150(1). We review the Board's decision based on the record that was before the Board.

Mowat Constr. Co. v. Dep't of Labor & Indus., 148 Wn. App. 920, 925, 201 P.3d 407 (2009). The Board's findings of fact are conclusive if they are supported by substantial evidence when viewed in light of the record as a whole. RCW 49.17.150(1); Mowat Constr., 148 Wn. App. at 925. Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted. Mowat Constr., 148 Wn. App. at 925. We do not reweigh the evidence on appeal. Zavala v. Twin City Foods, 185 Wn. App. 838, 867, 343 P.3d 761 (2015). Instead, we view this evidence in the light most favorable to the party that prevailed before the Board—here, the Department. Frank Coluccio Constr. Co. v. Dep't of Labor & Indus., 181 Wn. App. 25, 35, 329 P.3d 91 (2014). If we determine that substantial evidence supports the Board's factual findings, we then decide if those findings support the Board's conclusions of law. J.E. Dunn Nw. v. Dep't of Labor & Indus., 139 Wn. App. 35, 42, 156 P.3d 250 (2007).

WAC 296-45-345(3) requires that workers create an EPZ before grounding and performing work on transmission and distribution lines.[3]

The Department may not issue a citation if unpreventable employee misconduct caused the violation. RCW 49.17.120(5)(a). To establish the affirmative defense of unpreventable employee misconduct, an employer must show:

> (i) A thorough safety program, including work rules, training, and equipment designed to prevent the violation;
> (ii) Adequate communication of these rules to employees;

---

[3] "Temporary protective grounds shall be placed at such locations and arranged in such a manner as to prevent each employee from being exposed to hazardous differences in electrical potential." WAC 296-45-345(3).

>    (iii) Steps to discover and correct violations of its safety
> rules; and
>    (iv) Effective enforcement of its safety program as written in
> practice and not just in theory.

RCW 49.17.120(5)(a). An employer asserting the defense must prove each element. Wash. Cedar & Supply Co. v. Dep't of Labor & Indus., 119 Wn. App. 906, 911, 83 P.3d 1012 (2004). Furthermore, the "evidence must support the employer's assertion that the employees' misconduct was an isolated occurrence and was not foreseeable." BD Roofing, Inc. v. Dep't of Labor & Indus., 139 Wn. App. 98, 111, 161 P.3d 387 (2007).

Potelco's argument on appeal focuses on the third and fourth elements of the defense. Potelco first asserts that, contrary to the Board's finding, it took adequate steps to discover and correct safety violations.

An employer's steps to discover and correct safety violations are inadequate when unannounced inspections are infrequent and workers caught violating the rules are not consistently disciplined or penalized, because such steps are insufficient to deter future violations. See Legacy Roofing Inc. v. Dep't of Labor & Indus., 129 Wn. App. 356, 365, 119 P.3d 366 (2005).

Surprise inspections by Potelco safety inspectors were infrequent. Crews were forewarned of the overwhelming majority—up to 80 percent—of Potelco's "unannounced" safety inspections.[4] With advance warning, employees were

---

[4] Potelco contends that, if work crews appear to have been forewarned about impending inspections, inspectors respond by conducting inspections in different areas. However, Potelco cites no company policy mandating such a response, nor does it cite any data or reports documenting such changes. Rather, Potelco relies solely on the testimony of company safety

often able to correct safety violations before inspectors arrived. Consequently, inspectors did not detect, and did not impose discipline for, these violations.

Furthermore, even when Potelco employees were caught violating safety rules, they were not consistently disciplined or penalized. Potelco's progressive disciplinary policy required that all discipline—including verbal warnings—be documented in writing. Nevertheless, Potelco safety coordinators admitted that Potelco rarely documented verbal warnings. Thus, an employee could receive numerous verbal warnings, yet incur no progressive discipline for repeating the same violation.

Potelco's steps to discover and correct violations of its safety rules were insufficient to deter future violations. Its practices "created an environment where Potelco's employees readily ignored some safety rules to perform work faster." Indeed, Potelco employees testified that they routinely saw coworkers break safety rules, yet never be disciplined. In the two years prior to March 2011, Potelco conducted over 1,000 safety audits, yet there is no evidence that a single audit resulted in employee discipline. Such an atmosphere renders future violations foreseeable.

Because Potelco employees were forewarned of the majority of safety inspections and Potelco failed to enforce its disciplinary policy, substantial evidence supports the Board's finding that Potelco failed to take adequate steps to discover and correct violations of its safety rules.

---

coordinator George Bellos, who explained that, if he hears crews are forewarned that he is in the area, he might choose to move to a new area. Bellos referenced no company policy compelling him to make such an adjustment, nor did he state that other safety inspectors act similarly.

Potelco next asserts that, contrary to the Board's finding, it effectively enforced its written safety program in practice.

It is not enough for an employer to show the existence of "a good paper program." BD Roofing, 139 Wn. App. at 113. Rather, the employer must prove the "'[e]ffective enforcement of its safety program . . . in practice and not just in theory.'" BD Roofing, 139 Wn. App. at 113 (alterations in original) (quoting RCW 49.17.120(5)).

When a supervisor is involved in a violation, "the proof of unpreventable employee misconduct is more rigorous and the defense is more difficult to establish since it is the supervisor's duty to protect the safety of employees under his supervision." Sec'y of Labor v. Archer-W. Contractors Ltd., 15 BNA OSHC 1013, at *5 (No. 87-1067, 1991). "[I]n cases involving negligent behavior by a supervisor or foreman which results in dangerous risks to employees under his or her supervision, such fact raises an inference of lax enforcement and/or communication of the employer's safety policy." Brock v. L.E. Myers Co., 818 F.2d 1270, 1277 (6th Cir. 1987). Supervisor participation in or failure to enforce a safety rule weighs against the defense of unpreventable employee misconduct. See, e.g., In re Jornada Roofing 1, Inc., 2010 WL 1170616 (Wash. Bd. Ind. Ins. App.); In re C. Walter Smith Roofing Contractors, Inc., 1998 WL 718189 (Wash. Bd. Ind. Ins. App.).[5]

---

[5] We consider the Board's significant, published decisions as nonbinding, persuasive authority. See Dep't of Labor & Indus. v. Shirley, 171 Wn. App. 870, 887-88, 288 P.3d 390 (2012) (discussing two published Board decisions in support of legal analysis). Because we find the cited principles sound, we apply them herein.

The same evidence that supports the Board's finding that Potelco failed to take adequate steps to discover and correct safety violations also supports its finding that Potelco failed to effectively enforce its written safety program in practice. This finding is further supported by evidence of Williams' participation in the violation. Williams was empowered with supervisory authority. Specifically, he had the power to stop work, as well as to discipline—and even terminate—employees who violated safety rules. Despite his authoritative position, Williams failed to ensure that his crew established an EPZ before beginning work on the transmission line. Indeed, knowing that no EPZ had been established, Williams himself actively participated in the work. Williams' involvement raises an inference of "lax enforcement and/or communication" of Potelco's safety policy. Moreover, the combination of Potelco's lax enforcement of its safety rules and Williams' perception of pressure to work quickly made this violation foreseeable.

Substantial evidence supports the Board's findings that Potelco did not take adequate steps to discover and correct violations of its safety rules and that it did not effectively enforce its written safety program in practice. These findings support the Board's determination that Potelco's failure to establish an EPZ was not the result of unpreventable employee misconduct, and that Potelco therefore violated WAC 296-45-345(3).

III

Potelco next contends that the citation it received for failing to effectively establish, supervise, and enforce its accident prevention program in practice

- 9 -

should be vacated. This is so, Potelco asserts, because there is no substantial evidence that its accident prevention program is deficient, and because the evidence it offered as proof of its unpreventable employee misconduct defense also supports a finding that it effectively enforces its accident prevention program in practice. We disagree.

Employers must "[e]stablish, supervise, and enforce [an] accident prevention program in a manner that is effective in practice." WAC 296-800-14025.

In support of their respective positions regarding this violation, both parties repeat the arguments they advanced concerning the unpreventable employee misconduct defense. As discussed previously, substantial evidence supports the Board's finding that Potelco's failure to establish an EPZ was not the result of unpreventable employee misconduct—partially because Potelco failed to effectively enforce its written safety program in practice.

Given that Potelco again advances the same unpersuasive arguments, we conclude that substantial evidence supports the Board's finding that Potelco failed to effectively enforce its accident prevention program in practice. This finding supports the Board's determination that Potelco violated WAC 296-800-14025.

IV

Potelco next contends that both citations were inappropriately designated as serious. This is so, Potelco asserts, because Williams and his crew acted unforeseeably when they disregarded Potelco's repeated warnings regarding

- 10 -

induced voltage hazards and instructions to build an EPZ. We disagree.

To sustain a serious violation of a WISHA safety regulation, there must be "a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such workplace, *unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.*" RCW 49.17.180(6) (emphasis added). Constructive knowledge may be proved through evidence that a violation was in plain view. See BD Roofing, 139 Wn. App. at 109-10. Such knowledge is established where the violation was "readily observable or in a conspicuous location in the area of the employer's crews." Erection Co. v. Dep't of Labor & Indus., 160 Wn. App. 194, 207, 248 P.3d 1085 (2011). Moreover, when a supervisor has actual or constructive knowledge of a safety violation, such knowledge can be imputed to the employer. Danis-Shook Joint Venture XXV v. Sec'y of Labor, 319 F.3d 805, 812 (6th Cir. 2003); N.Y. State Elec. & Gas Corp. v. Sec'y of Labor, 88 F.3d 98, 105 (2d Cir. 1996); Ga. Elec. Co. v. Marshall, 595 F.2d 309, 312 (5th Cir. 1979).[6]

Potelco asserts that Williams and his crew acted unforeseeably when they disregarded Potelco's repeated warnings and instructions. However, the applicable standard here is whether Potelco *knew or should have known* of the violative condition—not whether the behavior that led to the violation was

---

[6] We need not announce the perimeters of this rule in order to apply it herein. Williams was a supervisor with the authority to terminate a worker's employment based on a violation of a safety rule. Under all versions of the case law, he was a supervisor to whom the rule applied.

- 11 -

*foreseeable*—and Potelco presents no evidence that it did not or could not have known of the violation.

Potelco's failure to establish an EPZ was appropriately characterized as a serious violation. Here, the entire work site was "in the open." Because the work site was exposed, any bystander—but especially the project foreperson—could have observed that an EPZ had not been created. On this basis alone, Potelco had sufficient knowledge of the violative condition. In addition, Potelco does not dispute that Williams actually knew about the EPZ violation. Because of his status as a supervisor with authority to terminate the employment of an employee who violated safety rules, the Board could rightly treat his knowledge as being imputed to Potelco. Thus, substantial evidence supports the Board's finding that Potelco knew that an EPZ had not been established. This finding supports the Board's designation of this violation as serious under RCW 49.17.180(6).

Potelco's failure to effectively enforce its accident prevention program in practice was also properly characterized as a serious violation. As previously explained, Potelco knew that Williams' crew failed to establish an EPZ, even though its accident prevention program mandates the creation of an EPZ before beginning work. Substantial evidence therefore supports the Board's finding that Potelco knew that its accident prevention program was not effectively enforced in practice.[7] This finding supports the Board's designation of this violation as serious under RCW 49.17.180(6).

---

[7] The other previously discussed violations of Potelco's safety program also support this finding.

No. 73226-9-I/13

Affirmed.

We concur: