IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| INFRASOURCE SERVICES LLC, | No. 50867-2-II |
| Appellant, | UNPUBLISHED OPINION |
| v. | |
| DEPARTMENT OF LABOR & INDUSTRIES, | |
| Respondent. | |

BJORGEN, J. — Infrasource Services LLC (IFS) appeals the superior court's order affirming the order of the Board of Industrial Insurance Appeals (Board) determining that the Department of Labor and Industries (Department) properly found that IFS committed serious worker safety violations and that those violations were not the result of unpreventable employee misconduct. IFS argues that (1) the Board's finding of fact 6 is unsupported by substantial evidence, (2) the Board erred by determining that the violations were "serious," (3) the Board erred by determining that the violations were not the result of unpreventable employee misconduct, and (4) the superior court erred by awarding statutory attorney fees to the Department.

We affirm the superior court's order affirming the Board's order and decline to consider IFS's argument regarding statutory attorney fees.

FACTS

On September 8, 2014, Raul de Leon, a compliance safety officer for the Department, was driving by an IFS jobsite and noticed two IFS employees, Chad Auckland and Carson Row, working in an exposed trench. Based on his observations, de Leon suspected that the trench was deeper than four feet.[1] De Leon was concerned about the men working in the exposed trench without the appropriate safety precautions.

After speaking with Mike Sawyer, the foreman and designated competent person of the jobsite, de Leon and his supervisor inspected the trench and determined that the depth of the trench was between four feet six inches and five feet one inch at various points. De Leon did not observe any trench safety protections being used at the jobsite, even though there were safety protections on site used to prevent the trench from caving in. De Leon also noted that Auckland, Row, and the unprotected trench were in plain view of Sawyer, who was operating an excavator near the trench.

Based on the depth of the trench and the lack of safety protection equipment, the Department issued a citation to IFS for violations of WAC 296-155-657(1)(a) (Violation 1-1a), and WAC 296-155-655(11)(b) (Violation 1-1b), imposing a penalty of $2,100. As a result of the violation, Sawyer was fired, Auckland was suspended for five days, and Row was suspended for three days.

IFS appealed the Department's citation to the Board, arguing that the violations were the result of unpreventable employee misconduct. On February 11, 2016, an industrial appeals judge (IAJ) conducted a hearing on the appeal. De Leon and Auckland testified for the Department,

---

[1] WAC 296-155-657(1)(a) requires certain safety measures when working in trenches over four feet deep.

and IFS's safety director, Alexander Bartells, testified for IFS. IFS submitted several exhibits regarding its training and safety protocols, but did not submit any documentary evidence regarding its employees' disciplinary history or implementation of its safety program.

IFS's disciplinary policy was described as "progressive," consisting of four levels: (1) verbal warning, (2) written warning, (3) suspension without pay, and (4) termination of employment. Administrative Record (AR), Ex. 8 at 9-10. The policy further stated that certain acts could result in immediate termination and that if a disciplinary situation merited retraining, "[a]ll retraining [would] be coordinated through the Safety Department and documented accordingly." AR, Ex. 8 at 9-10.

At the hearing, the Department questioned Auckland regarding IFS's disciplinary policy:

| [Department]: | Was this your first violation? |
| [Auckland]: | Yes. |
| [Department]: | Okay. And so from your understanding of [IFS]'s disciplinary policy, what's the penalty for a first violation? |
| [Auckland]: | Well, I received five days off and I believe their discipline is—it varies. |
| [Department]: | Okay. So it's a variable discipline? |
| [Auckland]: | Yes. |

AR, Transcripts, Verbatim Report of Proceedings (VRP) (Feb. 11, 2016) at 40.

The Department also cross-examined Bartells regarding IFS's disciplinary policy:

| [Department]: | So an employee may not know the level of discipline that they get for any particular violation or safety violation? |
| [Bartells]: | I would say it's fair to say that and, again, it's taken on a case by case basis depending on severity of the situation. |

AR, Transcripts, VRP (Feb. 11, 2016) at 117.

On March 16, the IAJ issued a proposed decision and order, consisting in part of the following:

The evidence presented by the employer does not refute the violation or question the penalty amount and those issues will not be discussed further. [IFS], through

3

the testimony of Mr. Bartells, has shown that they have a good safety policy and have made adequate efforts to keep their employees, and bystanders, safe. However, there was a failure of their safety plan on this day and the employer cannot show that this occurred because of unpreventable employee misconduct. An employer cannot show that their safety rules are effective in practice when the supervisor on site should have known that this violation was occurring, see *In re John Lupo Construction, Inc.,* Dckt. No. 96 W075 (June 10, 1997). Nothing cited in [IFS]'s brief convinces me that the Lupo case does not apply in this appeal. Mr. Sawyer, the supervisor and competent person, acts as an extension of the employer and he knowingly allowed his subordinates to act in a manner that was in derogation of the company safety rules and the WAC. In addition, Mr. Auckland had recently been trained to be a competent person. The facts surrounding this violation call into question the training provided to the supervisor by [IFS]. A safety program cannot be effective in practice when the person who is given charge of its enforcement is the same person orchestrating its violation.

. . . .

## FINDINGS OF FACT

. . . .

2.    On September 8, 2014, in Tumwater, Washington, two employees of [IFS] were working in a trench that was greater than 4 feet deep without trenching protection.

3.    On September 8, 2014, the supervisor [Sawyer] for [IFS] allowed the two employees to enter the trench when he had a plain view of the surrounding work area.

4.    The work activities of the employees of [IFS] on September 8, 2014 exposed them to hazards and injuries from a cave-in of trenching materials.

5.    The accuracy of the penalty calculation ($2,100 when considering the gravity of the serious violations with appropriate deductions) was not contested.

6.    On September 8, 2014, [IFS] did not effectively enforce its safety rules regarding the use of trenching protection when violations were discovered. Specifically, its supervisor exposed workers to hazards of trenches in excess of 4 feet deep without using trenching protection.

4

**CONCLUSIONS OF LAW**

. . . .

2.  On September 8, 2014, [IFS] committed a serious violation of WAC 296-155-657(1)(a) as alleged in Item No. 1-1a of Corrective Notice of Redetermination No. 317583649. This violation was appropriately assigned a penalty of $2,100 for a serious violation.

3.  On September 8, 2014, [IFS] committed a serious violation of WAC 296-155-655(11)(b) as alleged in Item No. 1-1b of Corrective Notice of Redetermination No. 317583649. This violation was appropriately grouped with Item No. 1-1a.

4.  The violations of WAC 296-155-657(1)(a) and 296-155-655(11)(b) were not the result of unpreventable employee misconduct as that term is used in RCW 49.17.120(5).

5.  The Department's Corrective Notice of Redetermination No. 317583649 issued on December 17, 2014 with penalties of $2,100, is correct and is affirmed.

AR at 27-29.

IFS then filed a petition for review with the Board, requesting review of the IAJ's order. The Board denied IFS's petition for review, and adopted the order. IFS appealed the Board's decision to the superior court. The superior court affirmed the Board's decision, and awarded the Department statutory attorney fees in the amount of $200. IFS appeals.

ANALYSIS

I. STANDARD OF REVIEW

On an appeal from the superior court, we review the Board's decision for substantial evidence based on the record that was presented to the Board. *Legacy Roofing, Inc. v. Dep't of Labor & Indus.*, 129 Wn. App. 356, 363, 119 P.3d 366 (2005). We determine whether substantial evidence supports the Board's findings, and whether the findings support the Board's conclusions of law. *BD Roofing, Inc. v. Dep't of Labor & Indus.*, 139 Wn. App. 98, 106, 161

P.3d 387 (2007); *Potelco, Inc., v. Dep't of Labor & Indus.*, 194 Wn. App. 428, 434, 377 P.3d 251, *review denied*, 186 Wn.2d 1024 (2016). The Board's findings are conclusive if they are supported by substantial evidence when viewed in light of the record as a whole. *Potelco*, 194 Wn. App. at 434.

Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted. *Potelco*, 194 Wn. App. at 434. We view the evidence in the light most favorable to the Department as the prevailing party before the Board, and we do not reweigh the evidence on appeal. *Potelco*, 194 Wn. App. at 434. Unchallenged findings are verities on appeal. *Mid Mountain Contractors, Inc. v. Dep't of Labor & Indus.*, 136 Wn. App. 1, 4, 146 P.3d 1212 (2006).

## II. FINDING OF FACT 6

IFS assigns error to finding 6, which states,

> On September 8, 2014, [IFS] did not effectively enforce its safety rules regarding the use of trenching protection when violations were discovered. Specifically, its supervisor exposed workers to hazards of trenches in excess of 4 feet deep without using trenching protection.

Br. of Appellant at 16; AR at 28. IFS argues that the safety violations were not foreseeable and that, therefore, its safety program was effectively enforced for purposes of demonstrating the affirmative defense of unpreventable employee misconduct.[2]

"[I]n order for the enforcement of a safety program to be 'effective,' the misconduct could not have been foreseeable." *Wash. Cedar & Supply Co. v. Dep't of Labor & Indus.*, 119 Wn. App. 906, 913, 83 P.3d 1012 (2004) (quoting *In re Jeld-Wen of Everett*, No. 88 W144, 1990 WL 205725 (Wash. Bd. of Indus. Ins. Appeals Oct. 1990)). The burden is on the employer to

---

[2] IFS does not offer argument regarding whether its supervisor exposed workers to trenches in excess of four feet deep without protection.

present evidence showing that it was implementing its safety program. *BD Roofing*, 139 Wn. App. at 113. An employer cannot demonstrate effective enforcement by the mere existence of a written program. *Id*. Further, evidence of inconsistent penalty enforcement or lack of evidence that a written program is consistently enforced each indicate ineffective enforcement. *See id*. The involvement of a supervisor in a violation gives rise to an inference of lax enforcement of a safety policy. *Potelco*, 194 Wn. App. at 437.

Here, the record provides substantial evidence that IFS failed to effectively enforce its safety program. While IFS presented testimony that it retrains employees after a safety violation where appropriate, it did not present documentation of any retraining. Further, IFS did not present documentation of its implementation or enforcement of its safety policy. More to the point, the Board found, in finding 3, that "the supervisor [Sawyer] . . . allowed the two employees to enter the trench when he had plain view of the surrounding work area." AR at 28. IFS does not challenge finding 3, and it is a verity on appeal. *Mid Mountain Contractors*, 136 Wn. App. at 4. Sawyer was responsible for identifying existing or predictable hazards or dangers. WAC 296-155-655.

Further, IFS's written policy is neither internally consistent nor consistent with legal standards. WAC 296-155-657(1)(a) requires safety precautions with trenches in excess of four feet deep. IFS's safety manual contradicts this law by stating that trenches in excess of five feet deep require shoring or safety precautions. Its safety orientation materials, on the other hand, call for safety precautions with trenches in excess of four feet.

These inconsistencies continue in the policy's implementation. IFS presented evidence that its written policy is a "progressive disciplinary policy" with established penalties. AR, Transcripts, VRP (Feb. 11, 2016) at 117. Both Bartells and Auckland, however, testified that

IFS uses a variable disciplinary policy, despite the IFS's manual stating that it employs a progressive disciplinary policy. Bartells testified that an employee may not know what level of discipline she is facing for a particular violation.

Therefore, finding 6 is supported by substantial evidence because IFS's supervisor was involved in the violation, IFS's written policies contradicted the applicable legal standard and were internally inconsistent, IFS did not document that it consistently enforces its written disciplinary policy, and IFS employees were uncertain as to how they might be disciplined for a particular violation.

IFS also contends that the Board erred by determining that it had not shown effective enforcement of its safety program in practice because the Board previously found that the unpreventable employee misconduct defense was satisfied in another Board decision, *In re: Shake Specialists, Inc.*, No. 99 W0528, 2001 WL 292977 (Wash. Bd. of Ind. Ins. Appeals Jan. 2001). However, in *Shake Specialists*, the Board found that "[n]one of the three employees [involved in the violation] was a supervisor responsible for enforcing the safety rules of Shake Specialists." 2001 WL 292977, at *4.

As stated above, the involvement of a supervisor in a violation gives rise to an inference of lax enforcement of a safety policy. *Potelco*, 194 Wn. App. at 437. Even if IFS had been otherwise consistently administering its disciplinary policy, the supervisor's failure to remove the employees from harm's way shows that it was not effectively enforcing its safety program in practice. Therefore, IFS's argument fails because *Shake Specialists* is factually distinguishable based on the involvement of a supervisor.

Taking all the evidence in the light most favorable to the Department, substantial evidence supports the Board's finding that IFS did not effectively enforce its safety rules in practice.

### III. UNPREVENTABLE EMPLOYEE MISCONDUCT

IFS contends that the Board erred by concluding that IFS's violations were not the result of unpreventable employee misconduct in conclusion 4. The Board did not err.

Conclusion 4 states, "The violations of WAC 296-155-657(1)(a) and 296-155-655(11)(b) were not the result of unpreventable employee misconduct as that term is used in RCW 49.17.120(5)." AR at 28. Unpreventable employee misconduct is an affirmative defense. *Wash. Cedar & Supply Co.*, 119 Wn. App. at 911. The Department may not issue a citation to an employer if a violation was the result of unpreventable employee misconduct. RCW 49.17.120(5)(a).

An employer can establish unpreventable employee misconduct by demonstrating:

(i)      A thorough safety program, including work rules, training, and equipment designed to prevent the violation;
(ii)     Adequate communication of these rules to employees;
(iii)    Steps to discover and correct violations of its safety rules; and
(iv)    Effective enforcement of its safety program as written in practice and not just in theory.

RCW 49.17.120(5)(a). The employer bears the burden to establish each element of the affirmative defense. *Potelco*, 194 Wn. App. at 435. Our inquiry is whether the Board's findings support the Board's conclusions of law. *Potelco*, 194 Wn. App. at 434.

In *Potelco*, Division One of our court considered how the participation of a work foreman or supervisor affected an employer's ability to raise the unpreventable employee misconduct defense. 194 Wn. App. at 437. The court reasoned:

> When a supervisor is involved in a violation, "the proof of unpreventable employee misconduct is more rigorous and the defense is more difficult to establish since it is the supervisor's duty to protect the safety of employees under his supervision." *Sec'y of Labor v. Archer–W. Contractors Ltd.*, 15 BNA OSHC 1013, at \*5 (No. 87-1067, 1991). "[I]n cases involving negligent behavior by a supervisor or foreman which results in dangerous risks to employees under his or her supervision, *such fact raises an inference of lax enforcement* and/or communication of the employer's safety policy." *Brock v. L.E. Myers Co.*, 818 F.2d 1270, 1277 (6th Cir. 1987). Supervisor participation in *or failure to enforce a safety rule* weighs against the defense of unpreventable employee misconduct.

*Id.* (emphasis added).

The Board found in finding 6 that IFS did not effectively enforce its safety rules. As discussed above, the Board's finding is supported by substantial evidence in the record. The affirmative defense of unpreventable employee misconduct requires the employer to demonstrate effective enforcement of its safety program. Because the Board found that IFS failed to effectively enforce its safety program, IFS could not meet its burden to establish each element of the affirmative defense. Conclusion 4 is thus compelled by the Board's findings.

IFS invites us to consider related federal cases in determining what effect a supervisor's participation in a violation has on an employer's ability to argue the unpreventable employee misconduct defense. We decline to consider IFS's invitation because *Potelco* is a Washington case that addresses those same circumstances.

The Board did not err in issuing conclusion 4.

## IV. SERIOUS OFFENSE

IFS maintains that the Board erred by determining that the September 2014 violations were "serious." Br. of Appellant at 21. Specifically, IFS argues that because the violations were entirely unforeseeable, IFS could not have known of the violation or circumstances, even with the exercise of reasonable diligence.

A serious violation exists in a workplace

if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such workplace, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

RCW 49.17.180(6). Sawyer, as the competent person, was required to perform daily inspections of excavations, adjacent areas, and protective systems for evidence of a situation that could result in possible cave-ins, indications of failure of protective systems, or other hazardous conditions. WAC 296-155-655. The competent person is also required to inspect excavation sites prior to the start of work and as needed throughout the shift. WAC 296-155-655.

The Department may show that IFS had constructive knowledge of a violation if it provides "evidence that a violation was in plain view." *Potelco*, 194 Wn. App. at 439. An employer has constructive knowledge of a violation where "the violation was 'readily observable or in a conspicuous location in the area of the employer's crews.'" *Potelco*, 194 Wn. App. at 439-40 (quoting *Erection Co. v. Dep't of Labor & Indus.*, 160 Wn. App. 194, 207, 248 P.3d 1085 (2011)). "Moreover, when a supervisor has actual or constructive knowledge of a safety violation, such knowledge can be imputed to the employer." *Potelco*, 194 Wn. App. at 440.

The Board found that "the supervisor [Sawyer] . . . allowed the two employees to enter the trench when he had a plain view of the surrounding work area," and this unchallenged finding 3 is a verity on appeal. AR at 28. Similarly, the Board found in finding 2 that "two employees of [IFS] were working in a trench that was greater than 4 feet deep without trenching protection," and this unchallenged finding is also a verity on appeal. AR at 28. Further, Sawyer, as the competent person, knowing that the excavation was occurring, had a duty to inspect the site for safety precautions before work started and throughout the shift as needed. Therefore, the

Board properly concluded that the September 2014 violations were serious because IFS had constructive knowledge of the violations and death or serious physical harm could result from them.

## V.  ATTORNEY FEES

IFS asserts that we should reverse the superior court's award of statutory attorney fees to the Department.  IFS provides no reasoning or citation to authorities for its argument.  We do not consider issues or arguments unsupported by citation to authority or rational argument.  RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

## CONCLUSION

We affirm the superior court's order affirming the Board's order, and we decline to consider IFS's argument regarding statutory attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Bjorgen, J.

We concur:

Johanson, P.J.

Sutton, J.