IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| ALLIED BUILDING PRODUCTS, LLC, | ) | No. 83398-7-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WASHINGTON STATE | ) | |
| DEPARTMENT OF LABOR | ) | |
| AND INDUSTRIES, | ) | |
| | ) | |
| Respondent. | ) | |

CHUNG, J. — The Department of Labor and Industries (Department) issued Allied Building Products, LLC (Allied) citations for serious violations under Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, relating to fall protection and ladder safety. Allied argues that the Department failed to show that Allied had knowledge of the violative conditions, or, alternatively, that the violations occurred due to unpreventable employee misconduct. We conclude that substantial evidence supports the Board of Industrial Insurance Appeals' (Board's) findings that Allied had constructive knowledge of the violative conditions, which were visible from the street, and that Allied failed to meet its burden of proof on the affirmative defense of unpreventable employee misconduct. Accordingly, we affirm.

FACTS

I.  Jobsite Inspection and Citation

Allied is a building supply distributor owned and operated by Beacon Roofing Supply. On August 12, 2019, Allied was delivering roofing materials to a residential construction site in Sammamish, Washington. The delivery crew consisted of a driver, who was responsible for placing materials onto the conveyer at the work site, and two delivery assistants, who physically loaded the materials onto the roof for the construction crew. Such a delivery typically takes one to two hours, and the crew is scheduled for about four to five deliveries each day.

As the Allied employees were working, Brian O'Reilly, a safety inspector for the Department, was in the area conducting drive-by inspections and saw two individuals on the roof. As O'Reilly parked and walked toward the construction site, he could see from the street that the workers on the roof were not using a proper fall protection system. The individuals on the roof were later identified as Brandon Mason and Adam Crouch. O'Reilly also observed that their ladder was improperly extended above the roofline. He took several photographs to document the conditions, then entered the job site and asked the workers to come down.

O'Reilly interviewed the employees on-site regarding their training and activities. Both Mason and Crouch acknowledged that they were aware they needed to be "tied off" while working on a roof. They also acknowledged the ladder they were using was improperly set up.

O'Reilly recommended a citation against Allied for two violations: a serious violation of former WAC 296-155-24611(1),[1] which required that a fall protection system be implemented any time roofing work is performed more than 10 feet above ground, and a serious violation of WAC 296-876-40030(1), which required a ladder be extended 3 feet above the landing surface, if the ladder length permits. On September 17, 2019, the Department issued a citation for two serious violations. Allied appealed, and on January 16, 2020, the Department issued "Corrective Notice of Redetermination" No. 317955757, affirming the two serious violations relating to fall protection and ladder extension. The Department also assessed a penalty of $3,000 for each violation.

II. Subsequent Procedural History

Allied appealed both violations to the Board. After a hearing, the industrial appeals judge (IAJ) issued a proposed decision and order on February 21, 2021, affirming the citation and concluding that the cited regulations applied, that they were violated, that Allied knew or with the exercise of reasonable diligence could have known of the violations, and that the workers were exposed to potentially serious or fatal injuries as a result. The IAJ also found that Allied did not effectively enforce its safety program and could not prove its defense of unpreventable employee misconduct. Allied petitioned for review before the full Board.

When the Board denied review on April 13, 2021, the IAJ's proposed decision and order became the Board's final decision and order. Allied then appealed to the superior

---

[1] Chapter 296-155 WAC, Part C-1, "Fall Protection Requirements for Construction," was repealed in 2020 to bring Washington's fall protection rules in line with the federal safety requirements administered by the Occupational Safety and Health Administration. Wash. St. Reg. 20-12-091. Current requirements relating to fall protection for construction have been moved to chapter 296-880 WAC, "Unified Safety Standards for Fall Protection." Wash. St. Reg. 20-12-091.

court, which determined that the Board's findings and conclusions were supported by substantial evidence, and affirmed.

Allied now appeals to this court, challenging the Board's decision as unsupported by substantial evidence and the law.

ANALYSIS

Allied argues (1) that the Department failed to prove that Allied had actual or constructive knowledge of the safety violations, and (2) even if it did, the violations were caused by unpreventable employee misconduct for which Allied should not be held responsible. We disagree.

I. Standard of Review

On appeal, we review a decision by the Board based on the record before the agency. Shimmick Constr. Co. v. Dep't of Labor & Indus., 12 Wn. App. 2d 770, 778, 460 P.3d 192 (2020). The Board's findings of fact are conclusive if they are supported by substantial evidence, which is evidence "in sufficient quantity to persuade a fair-minded person of the truth of the declared premise." Frank Coluccio Constr. Co. v. Dep't of Labor & Indus., 181 Wn. App. 25, 35, 329 P.3d 91 (2014). The court does not reweigh the evidence on appeal. Ostrom Mushroom Farm Co. v. Dep't of Labor & Indus., 13 Wn. App. 2d 262, 271, 463 P.3d 149 (2020). Instead, we construe evidence in the light most favorable to the party that prevailed in the administrative proceedings. Shimmick, 12 Wn. App. 2d at 778.

The court then determines whether the findings of fact support the conclusions of law. Id. We review conclusions of law de novo. Inland Foundry Co. v. Dep't of Labor & Indus., 106 Wn. App. 333, 340, 24 P.3d 424 (2001). The court construes WISHA liberally

to reflect the purpose of providing safe working environments to workers in Washington. Frank Coluccio Constr., 181 Wn. App. at 36. We give substantial weight to the Department's interpretation of statutes and regulations within its area of expertise and will uphold that interpretation if doing so does not contradict the legislative intent. Id.

II. Applicable Safety Regulations

The purpose of WISHA is to "assure, insofar as may reasonably be possible, safe and healthful working conditions for every [person] working in the state of Washington" and "to create, maintain, continue, and enhance the industrial safety and health program of the state." RCW 49.17.010. The Department has statutory authority to adopt workplace safety regulations and to issue citations to employers who violate those safety regulations. RCW 49.17.040, .120(1). A "serious" violation exists

> if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such workplace, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

RCW 49.17.180(7).

The Department bears the burden of proving a WISHA violation. Ostrom Mushroom, 13 Wn. App. 2d at 272. To establish a serious violation of a WISHA safety regulation, the Department must prove these elements:

> (1) the cited standard applies, (2) the requirements of the standard were not met, (3) employees were exposed to or had access to the violative condition, (4) the employer knew or through the exercise of reasonable diligence could have known of the violative condition, and (5) there is a substantial probability that death or serious physical harm could result from the violative condition.

Ostrom Mushroom, 13 Wn. App. 2d at 272. For purposes of determining whether an employer knew or, through the exercise of reasonable diligence, should have known of a

5

violation, "reasonable diligence" involves several factors, including an employer's obligation to inspect the work area, to anticipate hazards to which employees may be exposed, and to take measures to prevent the occurrence. Erection Co. v. Dep't of Labor & Indus., 160 Wn. App. 194, 206-07, 248 P.3d 1085 (1993).

III. Constructive Knowledge

An employer can be found responsible for a safety violation when it has either actual or constructive knowledge of a hazard. W. Oilfields Supply v. Dep't of Labor & Indus., 1 Wn. App. 2d 892, 903, 408 P.3d 711 (2017). Allied focuses first on actual knowledge, arguing that because there was no Allied management employee present, knowledge cannot be imputed to the company. However, the Board's decision did not rest on evidence of actual knowledge, but rather, evidence of constructive knowledge. It is undisputed that no member of Allied's management witnessed the unsafe conditions.

Next, Allied argues that the Department failed to establish that Allied had constructive knowledge of the violative conditions. Allied suggests that even if there is no durational requirement, the duration of the violative conduct is still relevant to whether the violation could have been discovered through reasonable diligence. Therefore, Allied argues, the fact that its employees were on the roof only for a brief time[2] precludes a determination that Allied had constructive knowledge.

However, as we have noted previously, "[f]ocusing on duration may have the adverse effect of encouraging inspectors to leave workers in dangerous situations to prove a violation." Pro-Active Home Builders, Inc. v. Dep't of Labor & Indus., 7 Wn. App.

---

[2] The time the workers were on the roof before the inspector called them down was somewhere between 5 and 30 minutes, based on the conflicting testimony of Allied's branch manager, who was not present, and the safety inspector, who was.

2d 10, 20, 465 P.3d 375 (2018). Instead, to determine constructive knowledge, we look to whether the safety violation was readily observable or in a conspicuous location. Bayley Constr. v. Dep't of Labor & Indus., 10 Wn. App. 2d 768, 783, 450 P.3d 647 (2019); see also BD Roofing, Inc. v. Dep't of Labor & Indus., 139 Wn. App. 98, 109, 161 P.3d 387 (2007); Erection Co., 160 Wn. App. at 207. Where the work site is exposed and "any bystander" could observe the violation, courts have found the employer has constructive knowledge. E.g., Potelco Inc. v. Dep't of Labor & Indus., 194 Wn. App. 428, 440, 377 P.3d 251 (2016); see also Pro-Active Home Builders, 7 Wn. App. 2d at 13, 19 (inspector "could see the safety violations from his car when he arrived at the jobsite"). We decline to depart from these prior decisions regarding the relevance of duration to proof of constructive knowledge.

The Board's determination that Allied had constructive knowledge is supported by substantial evidence. Mason and Crouch were working on a roof, exposed to falls between 22 and 28 feet—enough to cause substantial injury or death. While they were wearing full-body harnesses, they were not "tied off" to the anchor point. O'Reilly was driving on a public street about a block away when he saw them working on the roof. As he parked his car and approached the work site from the street, he could readily see the employees were not wearing proper fall protection. The violations were sufficiently conspicuous that he was able to take multiple photographs clearly showing two employees not properly tied off and the ladder not properly extended. Allied's branch manager confirmed that the employees' failure to use their lifelines would have been visible to an observer on the ground. Based on these facts, substantial evidence shows that any member of the public passing by could have seen the existence of the violative

conditions and, thus, supports the conclusion that Allied had constructive knowledge of the violative conditions.

IV. Unpreventable Employee Misconduct

We next turn to whether Allied established the affirmative defense of unpreventable employee misconduct. Even if the Department has proved all elements of a violation, an employer may defeat the claim with proof that its employees disobeyed safety rules despite the employer's diligent communication and enforcement. Asplundh Tree Expert Co. v. Dep't of Labor & Indus., 145 Wn. App. 52, 62, 185 P.3d 646 (2008).

To successfully assert the defense, Allied needed to show (1) a thorough safety program, including work rules, training, and equipment designed to prevent the violation; (2) adequate communication of these rules; (3) steps to discover and correct violations; and (4) effective enforcement of its safety program as written in practice and not just in theory. RCW 49.17.120(5); W. Oilfields Supply, 1 Wn. App. 2d at 906-07. To show that a safety program is effective in practice, the employer must prove that the violating employee's misconduct was an isolated occurrence and was not foreseeable. Wash. Cedar & Supply Co. v. Dep't of Labor & Indus., 119 Wn. App. 906, 913, 83 P.3d 1012 (2003). The employer carries the burden to prove all four elements of the defense. Id.

Allied submitted documentation regarding its written safety program and how these rules were communicated to its employees. As evidence of its efforts to discover and correct violations, Allied also provided documentation from its branch manager's previous safety inspections, as well as pre-delivery worksheets. However, it was undisputed that the manager inspected only one or two jobs each week, and those inspections were not always while employees were on-site. His employees were aware the chances of their

work being inspected were minimal. The manager also could not think of a time in which he had ever seen a fall protection violation, or disciplined an employee for one, prior to this incident. Based on this evidence, the Board determined that "Allied's measures to prevent the occurrence of the violations were inadequate due to ineffective enforcement practices including their lack of disciplinary actions."

Allied argues the Board erred by interpreting the branch manager's statement as evidence that its safety enforcement was ineffective. Again, we disagree. In light of the volume of deliveries that Allied made each week, it was a logical inference that the lack of violations indicated a lack of effective enforcement. Further, Mason, one of the employees who violated the regulations, testified that although he knew the risks, he chose not to use the necessary fall protection because

> [r]opes tend to be -- I guess they can kind of get in the way . . . . It can get you tangled up and potentially cause a fall that way even with wearing a rope where that's somewhat mitigated without wearing the rope. So I guess it was a sense of convenience.

Mason was an experienced construction worker who had worked for Allied for a year before this incident and was in charge of training other employees. Mason's own explanation of how the ropes "get in the way" suggested this was not the first time he had disregarded the safety regulations. Finally, when all three members of the work crew were either actively engaged in committing multiple safety violations or failed to report or remedy the violations that were in plain view, it strains credibility for Allied to characterize the misconduct as "isolated." We must construe evidence in the light most favorable to the party that prevailed in the administrative proceedings. Shimmick, 12 Wn. App. 2d at 778. The Board's conclusion that Allied failed to meet its burden of proof on all elements of the affirmative defense was supported by substantial evidence.

Affirmed.

_Chung, J._

WE CONCUR:

_Smith, A.C.J._                    _Mann, J._