# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

RNI CONSTRUCTION, LLC,

                    Appellant,

        v.

WASHINGTON STATE DEPARTMENT
OF LABOR AND INDUSTRIES,

                 Respondent.

No. 84468-7-I

DIVISION ONE

UNPUBLISHED OPINION

FELDMAN, J. — RNI Construction (RNI), an upper-tier subcontractor, appeals a Board of Industrial Insurance Appeals (Board) decision and order affirming Department of Labor and Industries (L&I) Corrective Notice of Redetermination No. 317958834 (CNR). The CNR cited RNI with two fall protection violations under Washington Industrial Safety and Health Act (WISHA) regulations after a compliance safety and health officer (CSHO) arrived on the job site and observed: (1) an employee of RNI's subcontractor, Addington Construction, on an upper level without fall protection at a height of four feet or greater in violation of former WAC 296-155-24609(2)[1]; and (2) an unguarded window on the landing of a staircase that workers used to access the third level in violation of former WAC 296-155-24609(5)(a). RNI argues that the Board

_____

[1] The Department of Labor and Industries repealed WAC 296-155-24609 effective October 1, 2020. See Wash. St. Reg. 20-12-091. All citations to WAC 296-155-24609 are to the 2016 version.

erroneously upheld those citations. Because the facts of this case are known to the parties, we do not repeat them here except as relevant to the arguments below. We reject RNI's arguments and affirm as follows.

RNI first argues that the Board "failed to articulate the appropriate standard of care" when it upheld the CNR against RNI based on proof that a lower-tier subcontractor violated WISHA regulations. The Board's legal analysis is correct. In *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 456, 788 P.2d 545 (1990), the Supreme Court held that WISHA requires general contractors "to comply with all pertinent safety regulations with respect to every employee on the job site," including both direct employees *and* employees of independent contractors. This court, in turn, has held that the duty recognized in *Stute* is also imposed on upper-tier subcontractors who hire subcontractors because such upper-tier subcontractors occupy the same control over the worksite as a general contractor. *Husfloen v. MTA Construction*, 58 Wn. App. 686, 689, 794 P.2d 859 (1990). RNI likewise recognizes that "general contractors and upper-tier subcontractors have 'per se control' over the workplace." Thus, RNI can properly be cited based on a lower-tier contractor's WISHA violations as the Board correctly concluded.

Nor did the Board hold RNI strictly liable as RNI also claims. To establish a "serious" WISHA safety violation, L&I is required to prove the following:

> (1) the cited standard applies, (2) the employer did not meet the standard, (3) employees were exposed to, or had access to, the violative condition, (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition, and (5) there is a substantial probability that death or serious physical harm could result from the violative condition.

*Central Steel, Inc. v. Labor & Indus.*, 20 Wn. App. 2d 11, 19, 498 P.3d 990 (2021).

Here, L&I proved all of the required elements, including that RNI knew or, through the exercise of reasonable diligence, could have known of the violative condition (the fourth requirement). Given this showing, it necessarily follows that the Board did not hold RNI strictly liable.

Next, RNI argues that the Board incorrectly applied the "plain view" standard to show RNI's constructive knowledge of the violative conditions. Here too, the Board's analysis is legally correct. Under controlling case law, when a supervisor has actual or constructive knowledge of a safety violation, such knowledge can be imputed to the employer. *Potelco, Inc. v. Labor & Indus.*, 194 Wn. App. 428, 440, 377 P.3d 251 (2016). Constructive knowledge may be proved through evidence that a violation was in "plain view." *Id.* at 439. "Such knowledge is established where the violation was 'readily observable or in a conspicuous location in the area of the employer's crews.'" *Id.* at 439-40 (quoting *Erection Co. v. Dep't of Labor & Indus.*, 160 Wn. App 194, 207, 248 P.3d 1085 (2011)).

Here, RNI was hired to perform the framing on the job site. Consequently, RNI was in charge of the project on the day the CSHO observed an employee of RNI's sub-contractor working without fall protection on an upper level and saw an unguarded window on the landing of a staircase that led from the second level to the third level. *See Husfloen*, 58 Wn. App. at 690 (Holding that because MTA Construction was in charge of the project site, it could "not avoid owing a duty to Husfloen merely because it was a subcontractor and not the general contractor of the project"). Thus, if the violation was in "plain view," constructive knowledge of the violative condition may

properly be imputed to RNI. RNI's contrary argument—that "plain view" is the wrong analysis to apply in this instance—is without merit.

Finally, RNI argues that because it was not present on the job site when the violative conditions occurred, it could not have knowledge of those conditions. RNI is mistaken. A general contractor with supervisory authority over an area must ensure that the area is safe regardless of whether the general contractor is present and cannot avoid that responsibility merely by vacating the premises. *Vargas v. Inland Wash., LLC*, 194 Wn.2d 720, 733, 452 P.3d 1205 (2019). RNI, as an upper-tier subcontractor, had the authority to exercise control over the premises just the same as a general contractor. *Stute*, 114 Wn.2d at 461. Whether RNI was exercising control at the time when the violative conditions were found does not matter, as "[t]he test of control is the right to exercise control and not the actual exercise of control." *Id.* RNI's contrary argument fails as a matter of law.

Affirmed.

Feldman, J.

WE CONCUR:

Díaz, J.

Dwyer, J.