# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CENTRAL STEEL, INC., d/b/a HARRIS REBAR SEATTLE, INC., | No. 86201-4-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | |
| Respondent. | |

BIRK, J. — Central Steel, Inc., d/b/a Harris Rebar Seattle, Inc. challenges the order of the Board of Industrial Insurance Appeals (Board) upholding a citation issued by the Department of Labor and Industries (Department). Because the Board's findings are supported by substantial evidence, we affirm.

Central Steel was setting steel rebar for the construction of concrete columns for a new bridge. Its operations involved lifting rebar and formed fabricated rebar columns weighing thousands of pounds with synthetic slings. In response to an unrelated accident on June 2, 2021, Department Compliance Safety and Health Officer Patrick Austin Sheely inspected the work site. A representative of Central Steel was not present at the June 2, 2021 inspection because its work hours had ended before the accident. Sheely observed numerous synthetic slings used to move rebar, which he determined were inadequate and should be replaced. Sheely conducted additional inspections on

June 3, 2021, June 7, 2021, June 15, 2021, and June 21, 2021. Sheely interviewed Matt Lutz, a foreman at Central Steel, about the condition of the straps. Lutz inspected the straps monthly and daily before the start of work.

The Department issued Central Steel a citation for violation of the Washington Administrative Code, penalizing the company $3,200.00. Before the Board, without objection from Central Steel, the Department obtained leave to amend the citation to allege a violation of WAC 296-155-55820. Under that code provision, a "qualified person" must perform a visual inspection of synthetic webbing slings for damage "each day or shift the synthetic webbing sling is used," and "[i]mmediately remove from service any sling that is damaged beyond the criteria listed in Table 25." WAC 296-155-55820(2)(b). The criteria listed in Table 25 include, in relevant part, missing or illegible sling identification; acid or caustic burns; melting or charring on any part of the sling; holes, tears, cuts or snags; broken or worn stitching in load bearing splices; excessive abrasive wear; knots in any part of the sling; discoloration, brittle fibers, and hard or stiff areas that may indicate chemical or ultraviolet/sunlight damage; and fittings that are pitted, corroded, cracked, bent, twisted, gouged or broken. WAC 296-155-55820(2) tbl.25.

Central Steel concedes "[t]here is no dispute that the torn or frayed straps observed at the time of [Sheely's] inspection met the removal criteria." While Central Steel goes to some length in arguing that the regulation "does not require the employer to inspect the straps more than once per shift," the Department concedes that it has never asserted that straps must be removed the moment they

meet removal criteria. The issue the parties dispute, as aptly summarized by Central Steel, is whether "the straps met removal criteria when [Lutz] inspected them the morning of June 2, 2021." The Board found, "The preponderance of the credible evidence is that the removal conditions were not likely to have developed over the period of one shift, that is, the work performed on June 2, 2021." Central Steel challenges this finding.

On appeal from a superior court decision affirming a decision by the Board, we sit in the same position as the superior court and review the agency's order based on the administrative record. B & R Sales, Inc. v. Dep't of Lab. & Indus., 186 Wn. App. 367, 374, 344 P.3d 741 (2015). We accept the Board's findings of fact as true unless an aggrieved party both challenges a finding and presents argument "why specific findings are not supported by the evidence" with appropriate citations to the record. Inland Foundry Co. v. Dep't of Lab. & Indus., 106 Wn. App. 333, 340, 24 P.3d 424 (2001). "The Board's findings of fact are conclusive if they are supported by substantial evidence when viewed in light of the record as a whole." Potelco, Inc. v. Dep't of Lab. & Indus., 194 Wn. App. 428, 434, 377 P.3d 251 (2016). "Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." Id. We do not reweigh the evidence, but instead view the evidence in the light most favorable to the party that prevailed before the Board. Id. If substantial evidence supports the Board's factual findings, we then decide if those findings support the Board's conclusions of law. Id.

3

In proceedings before the Board, Sheely gave testimony supporting that removal conditions existed at the time of Lutz's inspection. Sheely testified the slings he examined on June 3 had "fraying damage" which met the removal criteria. Sheely testified, "[Y]ou can tell from the damage, the way it's fraying, that this is not damage that just occurred in the previous lift. This is damage that's been . . . there long enough to become frayed." Sheely based this opinion on his extensive experience lifting rebar with synthetic web slings and the state of the threads. Sheely further noted the photos he took of the slings showed "the dirt embedded on the underside of these broken strands where if they'd just been cut, they would not have a chance to have dirt embedded into the broken parts of the damage." When specifically asked how he knew the wear and tear on the slings were not from one day of use, Sheely responded,

> [M]uch of the damage and the fraying that's occurring on these slings, which would be removal criteria in itself, is not something that occurs over one lift. It occurs over—like the load sawing on itself over multiple lifts and uses. And so it's not something that happens typically over the course of a single day.
> Additionally, were these slings elsewhere, I believe it was Marty Ehnat who stated they'd removed eight slings from service in the last month. My inspection noted on a single day that there were eight slings that met removal criteria. And even given a wide margin for how many slings they're using in a day and how often these slings are used, that amount of damage that would be found on a single day would be there would be really dozens and dozens, significant multipliers of eight. They would be removing way more than eight slings a month if they're doing this much damage to them.

Substantial evidence supports finding of fact 5.

Central Steel points to other evidence, describing the thoroughness of Lutz's inspections, his readiness to remove straps from service, the roughness of

4

rebar, and the speed with which it can fray nylon straps. Central Steel argues this evidence showed that the straps must not have met removal criteria at the time of Lutz's inspection. But in reviewing findings of fact for substantial evidence, we do not reweigh evidence for whether it could have supported a different outcome. Ramos v. Dep't of Lab. & Indus., 191 Wn. App. 36, 41, 361 P.3d 165 (2015).

Central Steel assigns error to other findings of fact and conclusions of law in which the Board addressed the hazardousness of the violation and the penalty amount. These findings and conclusions necessarily flow from finding of fact 5. Other than challenging the evidence that the removal conditions existed at the time of the inspection, Central Steel does not provide any argument that the Board otherwise erred in assessing the severity of the hazard if the evidence supported it or the amount of the penalty. Because finding 5 is supported by substantial evidence, there is no need to further address the other challenged findings.

The parties disagree about the proper interpretation of the Table 25 criterion referring to "[d]iscoloration, brittle fibers, and hard or stiff areas that may indicate chemical or ultraviolet/sunlight damage." Central Steel argues the Board erred by considering only that the straps were discolored at the time of inspection, because the regulation requires discoloration "and" brittleness and hard or stiff areas to meet this removal criterion. Quoting State v. Kozey, 183 Wn. App. 692, 698, 334 P.3d 1170 (2014), the Department argues that this is one of the exceptional times the word "and" should be given " 'disjunctive force' " to preserve the regulation's intent. However, it is not necessary to address this argument because Sheely testified the slings had "the damage and the fraying" supporting removal

independent of discoloration.  Sheely based his estimation of the age of the wear on this damage and "[i]n addition" ultraviolet damage and impregnation of dirt. Because the finding that removal conditions were present at the time of the inspection did not rely on finding ultraviolet damage based on discoloration alone, it is not necessary to resolve the parties' disagreement over the meaning of the word "and" as used in this instance.

Affirmed.

_Birk, J._

WE CONCUR:

_Chung, J._      _Dwyer, J._