**FILED**
**DECEMBER 30, 2021**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DAVEY TREE SURGERY CO., | ) | |
| | ) | No.  37692-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DEPARTMENT OF LABOR AND | ) | |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Davey Tree Surgery Co. (Davey Tree) challenges the Washington

State Board of Industrial Insurance Appeals (Board) ruling that it possessed knowledge

that its employee failed to wear protective chaps in violation of a work safety rule.  The

superior court reversed the Board's decision.  Because sufficient evidence supported the

finding and the law supporting the Board's ruling, we reverse the superior court and

affirm the Board.

FACTS

We glean the facts primarily from administrative hearing testimony.  On October

7, 2016, Timothy McMinn served as a Department of Labor and Industries (DLI)

compliance safety and health officer and the lead investigator in the DLI Wenatchee

office.  On that autumnal day, McMinn drove by a worksite in Wenatchee and saw a

worker operating a chainsaw. Wood chips dusted the air. McMinn stopped his vehicle to assess whether the chainsaw operator wore the necessary personal protective equipment (PPE).

From the street, Timothy McMinn watched worker Robert Reimer for one to two minutes, as Reimer operated a chainsaw to cut large tree limbs into shorter pieces. McMinn discerned that Reimer wore no leg protection. From his vehicle, McMinn took three photographs of Reimer operating the chainsaw without chaps, which prevent injury to the leg if the chainsaw slips and hits the leg.

After shooting photographs, Timothy McMinn approached the worksite to conduct a safety inspection. He identified the employer on site as Davey Tree and the work as arborist duties. McMinn took no measurements, but estimated the work site to be twenty feet long by thirty to forty feet wide.

Timothy McMinn spoke with Michael Larsen, who identified himself as the foreman on the worksite. Larsen spoke with his supervisor by phone and then authorized McMinn to inspect the site. McMinn found three Davey Tree employees on site, including Larsen, Robert Reimer, and a third unidentified worker. McMinn confirmed that Reimer wore no leg protection.

On October 20, 2016, DLI issued a citation for a serious safety violation to Davey Tree for violating WAC 296-800-16040 when failing to ensure that employee Robert Reimer wore leg protection while sawing tree limbs. According to the citation, the

activity "exposed him to lacerations, amputations, and death in the event of a kick back or error on the part of the employee." Clerk's Papers (CP) at 186. The citation imposed a penalty of $2,100 against Davey Tree.

PROCEDURE

Davey Tree appealed the citation from DLI to the Board of Industrial Insurance Appeals. An administrative law judge (ALJ) conducted an evidentiary hearing to address Davey Tree's appeal. DLI only called Timothy McMinn to testify at the hearing, while Davey Tree called no witnesses.

DLI safety compliance officer Timothy McMinn testified that Washington employers must require employees working with chainsaws to wear ballistic leg chaps to prevent lacerations, amputations, and death. Ballistic chaps are made from Kevlar and other fabrics. The chaps immediately stop a chainsaw's movement if the saw contacts a worker's legs. According to McMinn, ballistic chaps generally cover workers' thighs down over the top of their boots and are colored bright orange. McMinn opined that a chainsaw injury can result from only one second of inattention by the operator.

Timothy McMinn explained that, when McMinn questioned Michael Larsen at the jobsite, Larsen informed him that he did not realize Robert Reimer wore no "vest" while using a chainsaw. CP at 229. The context of McMinn's testimony suggests that Larsen meant to say "chaps" instead of "vest." CP at 229. Larsen commented to McMinn that he stood in "the bucket" thirty feet off the ground at the time Reimer ran the chainsaw. A

3

forestry bucket hoists crewmembers via a hydraulically-controlled boom to reach high tree limbs.

At the administrative hearing, Timothy McMinn testified that, although he did not know the exact locations on the worksite of Michael Larsen or the unidentified employee, Robert Reimer remained in the sight of Larsen and the third employee. McMinn insisted that Larsen, from the raised bucket, could have seen Reimer use the chainsaw without leg protection. McMinn stated that DLI did not permit compliance officers to go up in buckets during an inspection. Thus, he conceded that he could not testify with absolute certainty as to the extent of Larsen's view from the bucket. McMinn added, however, that bucket workers communicate with the crew on the ground during any bucket work and that communication requires the worker in the bucket to look below.

During his testimony, Timothy McMinn explained that Davey Tree workers had been on site for approximately three hours. Robert Reimer probably did not wear ballistic chaps at any time while on the site. McMinn testified that he did not "know what their [Davey Tree's] duties were that day off the top of my head." CP at 223. He added: "it isn't logging standard flat out that you have to wear leg protection if you're using a chain saw bucking logs." CP at 265. Timothy McMinn opined that, despite the issuance of the citation, Davey Tree maintained a good safety program, provided satisfactory training, and held safety meetings.

4

The ALJ issued a ruling upholding the citation issued against Davey Tree. The ALJ entered the following findings of fact:

> 2. On October 7, 2016, Davey Tree Surgery Company *was engaged in arborist services* at 505 Miller Street in Wenatchee, WA. *Three employees of Davey Tree Surgery Company were on site*. Robert Reimer was bucking and cutting limbs on the ground. *Mike Larsen was in a bucket above the site trimming limbs. The third employee is unidentified, but was on the job site*.
> 3. Inspector Mike [sic] saw Mr. Reimer using a chainsaw to cut limbs. Mr. Reimer was not using leg protection while using the saw.
> 4. The employer's failure to ensure that Robert Reimer was using proper and approved personal protective equipment at the time of the inspection exposed Mr. Reimer to the risk of serious bodily harm, including serious lacerations, amputations, and death. *The employer either knew or should have known about this hazard*.

CP at 46-47 (emphasis added). The ALJ affirmed DLI's citation and $2,100 penalty against Davey Tree. CP 47.

Davey Tree petitioned the Board for review of the ALJ's decision. The Board denied Davey Tree's appeal. The Board's "decision" section of its order referenced Michael Larsen as Davey Tree's foreman at the jobsite.

Davey Tree petitioned for judicial review of the Board's final order with the superior court. The superior court reversed the Board's ruling against Davey Tree. In its oral ruling, the superior court stated that insufficient evidence supported the finding that, with reasonable diligence, Davey Tree could have known of the code safety violation. Accordingly, the superior court reversed the Board's final order and vacated the citation and penalty against Davey Tree.

5

LAW AND ANALYSIS

Although Davey Tree is not the appellant, RAP 10.3(h) requires that it, as the respondent challenging an administrative order, assign error to those errors it deems the Board committed. Davey Tree must also place in its brief a separate assignment of error for each finding of fact it challenges. Davey Tree failed to do so.

Despite a demand for a separate assignment of each error, RAP 10.3(g) permits appellate review when the party's claimed error is "clearly disclosed" in a related issue. RAP 1.2(a) directs this court to liberally construe the RAPs. These RAPs allow appellate review of administrative decisions in spite of technical violations when a proper assignment of error is lacking but the nature of the challenge is clear and the challenged finding is set forth in the party's brief. *Ferry County v. Growth Management Hearings Board*, 184 Wn. App. 685, 725, 339 P.3d 478 (2014).

The argument headings in Davey Tree's brief isolates the challenged Board findings of fact. In turn, Davey Tree provides argument regarding insufficient evidence to support contested findings. Accordingly, we consider the merits of Davey Tree's challenge.

Davey Tree concentrates its appeal on a challenge to the Board's finding that Davey Tree knew or, by exercising reasonable diligence, could have known that its employee Robert Reimer failed to wear PPE. Davey Tree additionally challenges the Board's findings that (1) the company performed arborist work on October 7, 2016, (2)

6

three Davey Tree employees were present on the work site, (3) Michael Larsen stood in

the forestry bucket, when Timothy McMinn witnessed Reimer using a chainsaw without

PPE, and (4) Larsen was a foreman or supervisor.  We address the last four challenges

after discussing the standard of review.  We later resolve the principal question of

whether sufficient evidence supports the finding of constructive knowledge of the PPE

safety violation.

This court reviews the Board of Industrial Insurance Appeals' decision based on

the record before the agency.  *Frank Coluccio Construction Co. v. Department of Labor

& Industries*, 181 Wn. App. 25, 35, 329 P.3d 91 (2014).  We do not examine the superior

court's findings.  *Campbell v. Department of Social & Health Services*, 150 Wn.2d 881,

898, 83 P.3d 999 (2004).

In an industrial safety appeal, the Board's findings of fact are conclusive if

supported by substantial evidence.  Substantial evidence is evidence in sufficient quantity

to persuade a fair-minded person of the truth of the declared premise.  *Frank Coluccio

Construction Co. v. Department of Labor & Industries*, 181 Wn. App. 25, 35 (2014).

During a substantial evidence review, this court does not reweigh the evidence.  *Potelco,

Inc. v. Department of Labor & Industries*, 7 Wn. App. 2d 236, 243, 433 P.3d 513 (2018).

This court views the evidence and reasonable inferences in the light most favorable to

DLI, the prevailing party.  *Frank Coluccio Construction Co. v. Department of Labor &

Industries*, 181 Wn. App. 25, 35 (2014).  Unchallenged findings of fact are verities on

appeal. *Frank Coluccio Construction Co. v. Department of Labor & Industries*, 181 Wn. App. at 35. If substantial evidence supports the Board's findings, this court determines whether the findings support the Board's conclusions of law. *Frank Coluccio Construction Co. v. Department of Labor & Industries*, 181 Wn. App. at 35.

The Washington State Constitution and the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, mandate "safe and healthful working conditions" for all Washington workers. CONST. art. II, § 35; RCW 49.17.010. This court construes WISHA statutes liberally to achieve the act's purpose of providing safe working conditions for workers in Washington. *Frank Coluccio Construction Co. v. Department of Labor & Industries*, 181 Wn. App. 25, 36 (2014).

WISHA provides DLI the authority to establish and enforce workplace safety and health rules. WAC 296-800-100. The Washington Administrative Code (WAC) catalogues "basic safety and health rules that affect all employers." WAC 296-800-100. The WAC requires that employers ensure their employees use any necessary PPE. WAC 296-800-160. PPE protects a worker's body from hazards in the workplace. WAC 296-800-160; WAC 296-800-16005.

DLI charged Davey Tree with a "serious" violation of the worker safety code. To demonstrate a serious violation, DLI must show that: (1) the cited standard applies; (2) the employer did not satisfy the requirements of the standard; (3) employees were exposed to, or had access to, the location of the violative condition; (4) the employer

knew or, through the exercise of reasonable diligence, could have known of the violative condition; and (5) there is a substantial probability that death or serious physical harm could result from the violative condition. *Frank Coluccio Construction Co. v. Department of Labor & Industries*, 181 Wn. App. 35, 36-37 (2014); *Washington Cedar & Supply Co. v. Department of Labor & Industries*, 119 Wn. App. 906, 914, 83 P.3d 2012 (2003). Davey Tree only challenges the fourth element.

*Arborist Work*

The Board of Industrial Insurance Appeals' finding of fact 2 reads, in relevant part:

> On October 7, 2016, Davey Tree Surgery Company *was engaged in arborist services* at 505 Miller Street in Wenatchee, WA.

CP at 46 (emphasis added). Davey Tree contends that no evidence established the nature of its work on the day in question. It emphasizes Timothy McMinn's testimony that he did not know, "off the top of my head," the duties of the workers on October 7, 2016. CP at 223.

Davey Tree may imply that, if it performed work of a non-arborist nature, Robert Reimer's failure to use PPE did not violate the regulation. Nevertheless, in its brief it does not expressly deny the performance of arborist work. Nor does Davey Tree supply another label for the type of work it performed at the site. Davey Tree simply contends that DLI carries the burden to establish every fact. Davey Tree does not explain the

9

relevance of the classification of its work. Davey Tree does not expressly contend that, assuming its work was of a nature other than arboring, it need not have taken steps to ensure the wearing of chaps.

### *Three Employees on the Job Site and McMinn in the Bucket*

The Board's finding of fact 2 reads, in relevant part:

> *Three employees of Davey Tree Surgery Company were on site.* Robert Reimer was bucking and cutting limbs on the ground. *Mike Larsen was in a bucket above the site trimming limbs. The third employee is unidentified, but was on the job site.*

CP at 46-47 (emphasis added). Davey Tree argues that substantial evidence does not support this finding of fact because McMinn admitted that he did not know where either Michael Larsen or the unidentified third employee stood or their activity on the job site. McMinn also testified that he did not know who was in the bucket. Davey Tree contends that, based on McMinn's testimony and the photos he took, a fair-minded person could only conclude that no one other than Robert Reimer was on site at the time of the alleged violation.

Davey Tree views the evidence only in a light favorable to it. Though it highlights Timothy McMinn's uncertainty during some of his testimony, Davey Tree ignores other pertinent testimony. McMinn also averred that he witnessed three Davey Tree employees on site. He stated that Robert Reimer was "certainly within visual sight" of the other two employees. CP at 209. When McMinn first approached the worksite, he spoke with

10

Michael Larsen, the self-identified foreman and one of the three employees McMinn saw. Larsen spoke with his supervisor over the phone, and then authorized McMinn to inspect the work site. Larsen explained to McMinn that he stood in the bucket thirty feet high while Reimer operated the chainsaw. The ALJ and the Board reasonably relied on this testimony to determine that three of Davey Tree's employees were present at the jobsite and that Michael Larsen was in a bucket above the site at the time of the safety violation. Substantial evidence supports the finding in its entirety.

### *Michael Larsen as a Foreman or Supervisor*

Davey Tree next argues substantial evidence fails to support the Board's implied finding that Michael Larsen was a foreman or supervisor for the employer, because Timothy McMinn admitted that he had no evidence supporting that Larsen had any authority to direct or correct safety problems. Davey Tree asserts that Larsen's need to call his supervisor before authorizing McMinn to inspect the work site indicated his lack of supervisory authority.

The Board's "decision" section of its order referenced Michael Larsen as the foreman. This finding of fact is supported by substantial evidence. As Timothy McMinn testified, Larsen identified himself as the foreman on site when McMinn first approached him. A finder of fact could infer that Larsen's call to the home office to gain permission for McMinn to inspect the worksite and Larsen's self-identification demonstrated some

11

supervisory capacity over the site. In turn, Larsen gave that permission to McMinn. Substantial evidence supports the Board's finding.

*Constructive Knowledge*

Davey Tree primarily argues that substantial evidence does not support the Board's finding of actual or constructive knowledge of the safety violation, because no fair-minded factfinder could determine what Davey Tree employees observed. According to Davey Tree, the only hearing witness, Timothy McMinn, acknowledged that he did not know where any of Davey Tree's employees stood, aside from Reimer. This challenge implicates finding of fact 4, which states:

> The employer's failure to ensure that Robert Reimer was using proper and approved personal protective equipment at the time of the inspection exposed Mr. Reimer to the risk of serious bodily harm, including serious lacerations, amputations, and death. *The employer either knew or should have known about this hazard*.

CP at 47 (emphasis added).

DLI advances three reasons for concluding that Davey Tree knew or should have known that Robert Reimer operated a chainsaw without PPE: (1) the hazard was in plain view, (2) the foreman, Michael Larsen, was present at the job site, and (3) if Davey Tree had exercised reasonable diligence, it would have discovered the violation. The third argument conflates with the first two contentions. We agree with DLI.

This court reviews the Board's interpretation and application of the constructive knowledge standard de novo. *See Erection Co. v. Department of Labor & Industries*, 160

12

Wn. App. 194, 199, 201-02, 248 P.3d 1085 (2011). DLI may present evidence of an employer's actual knowledge of a violative condition. *Frank Coluccio Construction Co. v. Department of Labor & Industries*, 181 Wn. App. 25, 37 (2014). The Department may also present evidence of an employer's constructive knowledge of a violative condition by showing that, through reasonable diligence, the employer could have known of the hazard. *Frank Coluccio Construction Co. v. Department of Labor & Industries*, 181 Wn. App. at 37. Reasonable diligence involves several factors, including an employer's obligation to inspect the work area, to anticipate hazards to which employees may be exposed, and to take measures to prevent the occurrence. *Erection Co. v. Department of Labor & Industries*, 160 Wn. App. at 206-07.

A supervisor's knowledge of a safety violation may be imputed to the employer. *Potelco, Inc. v. Department of Labor & Industries*, 7 Wn. App. 2d 236, 244 (2018). DLI may also demonstrate constructive knowledge by the employer by showing that the violative condition was readily observable or in a conspicuous location in the area of the employer's crews. *Pro-Active Home Builders, Inc. v. Department of Labor & Industries*, 7 Wn. App. 2d 10, 18, 465 P.3d 375 (2018). In Washington, duration is not a required element for proving an employer's constructive knowledge, because such a focus could encourage inspectors to leave workers in dangerous situations in order that the employer can disclaim knowledge. *Pro-Active Home Builders, Inc. v. Department of Labor & Industries*, 7 Wn. App. 2d 10, 19-20 (2018).

DLI argues that, to demonstrate constructive knowledge, it need only show that a safety inspector or bystander, not the employer's crew, could readily see the violation. DLI cites multiple cases to support this argument: *Pro-Active Home Builders, Inc. v. Department of Labor & Industries*, 7 Wn. App. 2d 10, 20 (2018); *Potelco, Inc. v. Department of Labor & Industries*, 7 Wn. App. 2d 236, 254 (2018); *BD Roofing, Inc. v. Department of Labor & Industries*, 139 Wn. App. 98, 109, 161 P.3d 387 (2007). We agree the decisions support this proposition.

In *Pro-Active Home Builders, Inc. v. Department of Labor & Industries*, 7 Wn. App. 2d 10 (2018), this court held that Pro-Active Home Builders, Inc. (Pro-Active) had constructive knowledge of seven serious WISHA violations. Pro-Active's superintendent John Hodges observed employee Onofre Valadez Gomez working on the roof of a house without safety equipment. Hodges instructed Valadez Gomez to use his safety line to connect his harness to an anchor. Subsequently, Hodges left the job site and left Valadez Gomez in charge of the site's safety. Since the work site required Pro-Active to work on two, two-story houses, Valadez Gomez erected a scaffold using a ladder as a walkway between the houses. The scaffold lacked fall protection and was potentially unstable. Another employee, Martin Gonzalez Verdozco, constructed a scaffold using a pump jack unsecured by ground spikes. DLI Safety Inspector Raul De Leon could see the safety violations from his car.

14

In *Pro-Active Home Builders, Inc. v. Department of Labor & Industries*, this court held that substantial evidence supported the Board's conclusion that the violations were readily observable or in a conspicuous location in the area of Pro-Active's crews. Therefore, sufficient evidence supported the finding that Pro-Active could have been aware of the hazardous conditions by exercising reasonable diligence. Pro-Active argued that no evidence showed that five of the seven violations existed for a sufficient period to be identified. This court dismissed this argument because Washington law does not require duration for constructive knowledge.

In *Potelco, Inc. v. Department of Labor & Industries*, 7 Wn. App. 2d 236, 254 (2018), this court affirmed four citations against Potelco, Inc. (Potelco) for serious WISHA violations. Potelco is a contractor that primarily works on high-voltage electrical lines. In 2014, a four-person Potelco crew worked to replace a single phase line with a triple phase line in Olympia. None of the crew established an equipotential zone (EPZ), a shunt that absorbs current from energized lines to minimize risk of injury around the work area. One crewmember dropped an electrical line down to apprentice lineman Brent Murphy. Later, foreman Benjamin Laufenberg worked near this same line. Since the line blocked a residential driveway, Laufenberg cut it, but failed to inform the rest of the crew of this fact. Subsequently, Murphy grabbed the line, without knowing it had been cut, and felt a tingling sensation in his hand. Murphy escaped serious injury,

because a nearby chain link fence absorbed a majority of the electric current running from the line.

This court held that the Potelco crew's failure to establish an EPZ constituted a safety violation. Both Benjamin Laufenberg's actual knowledge of the violation as a foreman and the violation's plain view presence provided sufficient evidence to impute knowledge to Potelco. This court reasoned:

> Because the work site was exposed, any bystander—but especially the project foreperson—could have observed that an EPZ had not been created. On this basis alone, Potelco had sufficient knowledge of the violative condition.

*Potelco, Inc. v. Department of Labor & Industries*, 194 Wn. App. 428, 440 (2016).

In *BD Roofing, Inc. v. Department of Labor & Industries*, 139 Wn. App. 98 (2007), this court held that substantial evidence supported a finding that BD Roofing (BD) knew of the fall hazards its employees faced while working on rooftops without fall protection equipment. This court also deemed BD's seven prior citations for the same violation persuasive evidence that BD's employees had a propensity to ignore safety regulations. Finally, this court held that BD's employees' violation was "easily observable." *BD Roofing, Inc. v. Department of Labor & Industries*, 139 Wn. App. 98 at 110. WISHA's compliance officer observed the violation as he drove past the site.

A fourth decision, not cited by DLI, is *Erection Co. v. Department of Labor & Industries*, 160 Wn. App. 194 (2011). DLI issued a citation against The Erection

Company, Inc. (TEC), a steel erection subcontractor, for violating fall protection safety regulations. TEC worked on a Microsoft Corporation data center. As part of the job, TEC's workers secured sheets of metal decking across the top of the building at thirty feet high. The roof decking arrived in bundles weighing between 2,000 and 3,000 pounds. Cranes hoisted the bundles onto the rooftop trusses for the workers to access the decking sheets. For safety purposes, TEC installed safety lines, called catenary lines, to structural members and to bundles of roof decking material. TEC employee Travis Watts attached his safety lanyard to a bundle of decking material. After Watts and a fellow coworker moved the bundle with a ratchet system, the unstable bundle fell from the beams supporting it. Because his safety lanyard was attached to the bundle, Watts fell with the bundle to his death.

On appeal, in *Erection Co. v. Department of Labor & Industries*, this court concluded that, with reasonable diligence, TEC could have learned or anticipated that its employees occasionally engaged in the hazardous practice of tying lanyards to insecure or moving bundles. This court found it relevant that TEC knew its workers commonly moved the bundles of roof decking material, even though the bundles were not secure, even when not in motion. This court concluded that TEC's employees' actions of tying off catenary lines to bundles occurred in plain view. Thus, substantial evidence supported that TEC had constructive knowledge of the safety violation.

17

Davey Tree contends that DLI's case lacks evidence that: (1) Davey Tree employees engaged in a practice of not wearing chaps while using a chainsaw, (2) the company and its supervisor had knowledge of such a practice, (3) Davey Tree was previously cited for the same or similar violations, and (4) crew members were in the location of the violation. In turn, Davey Tree distinguishes the four Court of Appeals decisions on the basis that Timothy McMinn, unlike the DLI investigators in the reported cases, observed only a "fleeting violation" and an evanescent violation fails to show an employer's constructive knowledge without other evidence. According to Davey Tree, a DLI officer's sighting only constitutes one of numerous factors supporting a finding of constructive knowledge. Davey Tree implies that constructive knowledge requires specific evidence, such as an employee practice or past citations for similar violations. We disagree.

As already stated, DLI may establish constructive knowledge by evidence showing that the violative condition was readily observable or in a conspicuous location in the area of the employer's crews. Although cases on which DLI relies found more evidence supporting constructive knowledge than just a safety officer's observations, none of these cases held that something more than what a department safety officer witnessed is necessary to make a knowledge finding. To the contrary, case law establishes that a violation in plain view to any bystander is sufficient to establish an employer's constructive knowledge.

18

>  Because the work site was exposed, *any bystander*—but especially the project foreperson—could have observed that an EPZ had not been created. *On this basis alone*, Potelco had sufficient knowledge of the violative condition.

*Potelco, Inc. v. Department of Labor & Industries*, 194 Wn. App. 428, 440 (2016)

(emphasis added). This court determined that the plain view of the lack of an EPZ

single-handedly demonstrated Potelco's constructive knowledge of the violation.

Here, as in *Pro-Active Home Builders, Inc. v. Department of Labor & Industries*,

Timothy McMinn witnessed a safety violation from his vehicle. McMinn saw Robert

Reimer operating a chainsaw without PPE from a city street. Reimer worked alongside

two other employees, including a self-identified foreman, on a relatively small job site,

measuring approximately twenty feet long by thirty or forty feet wide.

Davey Tree has no prior citations for similar safety violations. Nevertheless, the

law does not demand an earlier citation. The absence of past citations for similar

violations does not negate the readily observable nature of Davey Tree's violation in this

case. The Board could reasonably find that, if Timothy McMinn saw the violation, any

bystander walking or driving along the street could have also seen it.

The chainsaw Reimer used likely roared its distinctive sound. Protective chaps are

bright orange, making them visible, particularly on a small worksite. Because the

violation was in plain view, including to a foreperson, and because Davey Tree could

have learned of the condition had it exercised reasonable diligence, substantial evidence

supports the Board's finding that Davey Tree had constructive knowledge of the safety violation.

CONCLUSION

We reverse the superior court's ruling and affirm the Board of Industrial Insurance Appeals' ruling affirming DLI's citation and the $2,100 penalty imposed against Davey Tree.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, A.C.J.

_____
Staab, J.