# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SEFNCO COMMUNICATIONS, INC., | No. 55458-5-II |
| Appellant, | |
| v. | |
| DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondent. | |

BASSETT, JPT.[1] – SEFNCO Communications, Inc. appeals two citations issued by the

Department of Labor and Industries (DLI) under the Washington Industrial Safety and Health Act

of 1973[2] (WISHA) following the injury to one of its employees when he contacted an energized

power line during the installation of a telecommunications line. The Board of Industrial Insurance

Appeals (Board) upheld the citations, one for a violation of former WAC 296-32-220(10)(a)

(2007), a serious violation, for allowing the injured employee to come too close to energized power

lines, and the other for a violation of former WAC 296-32-230(4)(c) (2014), a general violation,

for having an employee at the job site who did not have the required first aid training.

---

[1] Judge Jeffrey Bassett is serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

[2] Chapter 49.17 RCW.

SEFNCO argues that the citation for the serious violation was improper because the findings that the employee was a supervisor and that SEFNCO had constructive knowledge of the serious violation are not supported by substantial evidence. SEFNCO further argues that even if the constructive knowledge finding was supported by substantial evidence, SEFNCO established the defense of unpreventable employee misconduct under RCW 49.17.120(5)(a). SEFNCO also argues that the evidence was insufficient to support the citation for the general violation because the DLI failed to prove that the employee at issue was required to have first-aid training.

We hold that (1) substantial evidence supports the finding that the injured employee was a supervisor, (2) substantial evidence supports the Board's constructive knowledge finding, (3) the Board's findings are inadequate to allow review of its conclusion that the unpreventable employee misconduct defense did not apply, and (4) SEFNCO's argument that the DLI failed to prove that the employee who was the subject of the general violation was required to have first aid training under former WAC 296-32-230(4)(c) has no merit. Accordingly, we remand this matter to the Board to make the necessary factual determinations and to determine whether SEFNCO's unpreventable employee misconduct defense applies. We otherwise affirm.

FACTS

I. CITATIONS AND CORRECTIVE NOTICE OF REDETERMINATION

On July 11, 2017, Kenneth Nelson, a SEFNCO employee, was injured when he contacted an energized power line while working on a nearby telecommunications line. The DLI investigated the incident and issued four citations, two of which are relevant in this appeal.

The first relevant citation was for a violation of former WAC 296-32-220(10)(a), a "[s]erious" violation, based on SEFNCO's failure to ensure that Nelson "did not approach or take

any conductive objects, to include the employee, closer to any electrically energized overhead lines" than allowed under Table 1 of chapter 296-32 WAC. Clerk's Papers (CP) at 39. The second relevant citation was for a violation of former WAC 296-32-230(4)(c), a general violation, based on SEFNCO's failure to provide first aid training to the employee who was assisting Nelson at the time of the incident.

The DLI issued corrective notices of redetermination (CNRs) rejecting the assertion that the DLI had not established the knowledge element and SEFNCO's unpreventable employee misconduct defense. SEFNCO appealed to the Board.

## II. PROPOSED DECISION AND ORDER AND BOARD'S DECISION

Following a hearing at which evidence and testimony was taken, an industrial appeals judge (IAJ) issued a proposed decision and order affirming the CNRs for the violations of former WAC 296-32-220(10)(a) and former WAC 296-32-230(4)(c).[3]

The introduction of the IAJ's proposed decision and order stated:

> SEFNCO Communications, Inc. filed an appeal from a [CNR] that found two serious violations and one general violation. The first serious violation is for failing to ensure that an employee not come in contact with an energized power line and the second is for not maintaining the scene of the accident so that it could be adequately inspected by the [DLI]. . . . The general violation is because an employee did not have first aid/CPR training at the time an employee was injured. The employer's defense to the first violation is that this was an unforeseen accident and secondarily that there was employee misconduct. *The [DLI] has proven this violation with the employer's constructive knowledge of the hazard and the misconduct defense does not apply.* . . . The general violation has been adequately proven because Mr. James, Mr. Nelson's co-worker on the day of accident, did not have the proper first aid training. The CNR is **AFFIRMED AS MODIFIED**.

---

[3] We note that although the parties did not present closing argument at the hearing before the IAJ, they did submit post-hearing briefing. In their post-hearing briefing, both parties discussed the reasonable diligence standard that we apply below.

*Id.* at 48 (emphasis added).

In the "discussion" section of the proposed decision and order, the IAJ summarized the testimony and discussed the issues.[4] *Id.* (capitalization omitted). The IAJ's summary of the testimony stated that on July 11, 2017, Nelson, a "splicer/aerial technician for SEFNCO," sustained a burn injury after contacting a high voltage electrical wire. *Id.*

Nelson testified that on the day of the accident, he was "build[ing] a new strand of cable and connect[ing] it to a business." *Id.* When Nelson arrived at the work site, he photographed an area of the work zone in which he had concern about his ability to perform the job safely due to ground clearance issues. After sending a photograph to his supervisor Timothy Lundell and speaking with Lundell, Nelson proceeded with the work.

As this work progressed, Nelson "used a lasher to put the new line of fiber optics onto the existing line." *Id.* During this process, Nelson was in an elevated bucket truck and was working with a "ground hand, Nathan James." *Id.* at 49. The IAJ summarized the accident as follows:

> The accident occurred when the lasher got hung up in the trees and Mr. Nelson then got into the bucket of the boom truck and raised it to try to maneuver the lasher.[5] When the cable with the lasher freed the bucket on the boom bounced, causing the power line to make contact with his right shoulder. Mr. Nelson fell into the bucket and Mr. James lowered it to the ground.

*Id.* at 49.

---

[4] SEFNCO does not challenge the IAJ's summary of the testimony. In fact, SEFNCO largely relies on the IAJ's summary of testimony in its opening brief. And our review of the record shows that the summary is accurate. Where necessary, we have included footnotes noting additional relevant testimony.

[5] Nelson also testified that he "didn't realize how far [he] had boomed up with the cable laying on [his] basket instead of in a rope." CP at 266.

Lundell, a construction manager on the project, testified that before the work started on this project, a SEFNCO engineer had reviewed the site and developed a construction plan. "This report could include hazards of the job." *Id.*

Lundell also "described the minimum approach distance (MAD) for working around electrical wires." *Id.* Lundell stated that SEFNCO "[e]mployees are trained to supply sufficient space away from the power lines because the electricity will take the path of least resistance, which can be the human body." *Id.* Lundell testified that Nelson was the only person to have been injured in this way that Lundell was aware of.

Lundell further "described the bucket truck used by Mr. Nelson and how the bucket will bounce." *Id.* Lundell stated that he had spoken with Nelson on the phone before Nelson started working and was aware of the sag in the lines. But Lundell stated that the sag in the lines that Nelson was concerned about was common and that he (Lundell) "did not believe that there would be a problem with MAD in doing this work," even though running the new line through the trees in the area "could be a challenge." *Id.* Lundell also testified that Nelson was "in charge on this job site," but that Nelson "did not have the authority to perform tasks such as hiring or firing." *Id.*

Rod Julian, "the statewide telecom health and safety officer for the [DLI]," testified that following an inspection of the site after the accident, the DLI "cited SEFNCO with a serious violation of WAC 296-32-220(10)(a) because the employer failed to ensure that a SEFNCO employee not come into contact with an energized power line." *Id.* at 49, 50. Julian also determined that there were 7200 volts in the line, which allowed him to establish the proper distances for MAD.

Julian also testified that the DLI issued "[a] general violation of WAC 296-32-230(4)(c) . . . because of the lack of first aid/CPR training for Mr. James." *Id.* at 50. Julian testified that he examined SEFNCO's records and, although James was "slated" to have the training soon, there was no record of James having received first aid-CPR training by the time of the accident. *Id.*

Julian agreed that "Nelson was not a company supervisor," but Julian testified that Nelson had been in charge of James when this accident occurred. *Id.* at 51. Julian stated that "[h]e believed that Mr. Nelson was a competent worker at this site and that the employer could rely on his abilities and that under the company plan no work was to be performed near the power line."[6] *Id.*

Rocky Wallace, SEFNCO's safety and compliance officer, testified about SEFNCO's training, disciplinary program, safety audits, and accident prevention programs. Wallace "reviewed the work Mr. Nelson was to perform on July 11, 2017 and, [stated that] if the trees seen in [the photograph Nelson had taken] were trimmed, he did not see a hazard in performing this work." *Id.* at 51. Wallace also "identified the lasher and described how [ ]it works." *Id.* Additionally, "Wallace agreed that Mr. Nelson was the competent person on site and responsible for getting the job done and directing the crew." *Id.*

Chris McBride, a lead for SEFNCO, testified that he and his crew were assigned "to secure the work area" after the accident. *Id.* McBride had worked with Nelson "on numerous occasions," and was "well aware of MAD and has received training on it." *Id.* McBride also reviewed Nelson's photograph and stated that "he did not observe any issue with power line difficulties if the trees were trimmed." *Id.*

---

[6] Julian also acknowledged that "[a]nybody who works in a bucket knows that it bounces." *Id.* at 346.

The IAJ then discussed the issues in light of this testimony:

There is no question that Mr. Nelson sustained injuries when he came within the MAD while stringing a fiber optic line while he was in the elevated bucket attempting to extricate the lasher from the trees. The employer would like me to classify this situation as an unforeseeable mishap with their highly experienced lineman momentarily entering the MAD when the bucket unexpectedly bounced. The [DLI] believes that they have shown all of the elements necessary to sustain these alleged violations for which the employer had actual or constructive knowledge. *Constructive knowledge comes from the view of the project prior to the commencement of work. Mr. Nelson took a photograph from the first pole and spoke with his supervisor about ground clearance, with it being known that the trees would have to be trimmed in order to string the new line. Mr. Nelson could have performed all of his necessary work outside the MAD, but with this tree situation it was foreseeable that the lasher could become tangled in the limbs and become necessary that the boom truck with its bucket be used to untangle the equipment. The witnesses all agree that it is known that the bucket will bounce and with the addition of the lasher's weight the bucket can bounce more. This is what occurred to Mr. Nelson and caused the violation with electrical contact within the MAD. . . .*

The employer put forth the defense of unpreventable employee misconduct and noted that while Mr. Nelson was the supervisor on this job he did not have the power to hire and fire. They would like me to use these facts and the Board's recent decision in *In re Tyson Fresh Meats*, [No. 17 W1079 (Bd. of Indus. Ins. Appeals Dec. 17, 2018)][7] to determine that the violations should be vacated. *I do not find that the facts in the present case meet those necessary for me to accept the employer's position.* The supervisor's conduct in *Tyson* go way beyond what was done by Mr. Nelson. As such, I rely more on the Board's analysis in *In re Jornada Roofing 1, Inc.*, [No. 08 W1050 (Bd. of Indus. Ins. Appeals Jan. 27, 2010)];[8] and *In re Greater American Construction*, [No. 12 W1058 (Bd. of Indus. Ins. Appeals Aug. 16, 2013)],[9] and *believe that the supervisor's participation in the safety violation weighed heavily in favor of assessing that unpreventable employee misconduct did not occur.* A similar stance was taken by the Court of Appeals in *Potelco, Inc. v. Department of Labor and Indus.*, 194 Wn. App. 428[, 377 P.3d 251] (2016). *I do not believe that this defense is applicable to SEFNCO in this case because of Mr. Nelson's supervisory tasks and the facts presented.*

. . . .

---

[7] http://www.biia.wa.gov/SDPDF/17W1079.pdf.

[8] http://www.biia.wa.gov/DO/08W1050_ORD_20100127_DO.PDF.

[9] http://www.biia.wa.gov/DO/12W1058_ORD_20130816_DO.PDF.

The [DLI] believes that SEFNCO did not contest the fact that Nathan James, Mr. Nelson's ground hand, did not have first aid training prior to engaging in this work and therefore violated [former] WAC 296-32-230(4)(c). SEFNCO indicates that he was scheduled to have this training and does not believe it was appropriate for Mr. James to have this training in order to work in the field with Mr. Nelson, who had the proper first-aid training. *Mr. James had only worked for the employer for a matter of days, but this does not alleviate the need for him to be properly trained before going into the field to assist Mr. Nelson. He needed the first aid training prior to doing so in order to be trained to assist if an injury occurred, which happened here, to his co-worker*. This violation is affirmed.

*Id.* at 53-54 (emphasis added).

In addition, the proposed decision and order included brief "findings of fact" and "conclusions of law" sections that stated:

FINDINGS OF FACT

. . . .

2. On July 11, 2017 in Fife, Washington, Kenneth Nelson, an employee of SEFNCO Communications, Inc. entered the [MAD] for working around electrical wires, a serious violation of [former] WAC 296-32-220(10)(a), and sustained significant burning injuries.

3. At the time of the July 11, 2017 accident, Mr. Nelson was the supervisor in charge of conducting the necessary work.

. . . .

5. On July 11, 2017, Nathan James, an employee of SEFNCO Communications, Inc., was working with Kenneth Nelson and had not yet received first aid training in violation of [former] WAC 296-32-230(4)(c).

. . . .

CONCLUSIONS OF LAW

. . . .

2. On July 11, 2017, SEFNCO Communications, Inc. committed a serious violation of [former] WAC 296-32-220(10)(a) as alleged in Item 1-1 of [CNR] No. 317946524. . . .

> 3. The violation of [former] WAC 296-32-220(10)(a) committed on July 11, 2017 was not the result of unpreventable employee misconduct as the term is used in RCW 49.17.120(5).
>
> . . . .
>
> 5. By July 11, 2017, Nathan James had not received first aid training and SEFNCO Communications, Inc., committed a general violation of [former] WAC 296-32-230(4)(c).

*Id.* at 54-55. The IAJ affirmed the serious and general violations.

SEFNCO petitioned for review of the IAJ's decision. The Board granted review and concluded that the IAJ's proposed decision and order was "supported by the preponderance of the evidence and [was] correct as a matter of law." *Id.* at 67. The Board adopted the IAJ's proposed decision and order by reference.

SEFNCO appealed the Board's decision to the superior court. The superior court affirmed the Board's decision. SEFNCO appeals.

No. 55458-5-II

ANALYSIS

I. SERIOUS VIOLATION: VIOLATION OF MAD

SEFNCO first challenges the finding of a serious violation of former WAC 296-32-220(10)(a).[10] We affirm that finding.

A. LEGAL PRINCIPLES

We review [the Board's] decisions directly based on the record before the agency. *W. Oilfields Supply v. Dep't of Labor & Indus.*, 1 Wn. App. 2d 892, 900, 408 P.3d 711 (2017). We review challenged findings of fact to determine whether they are supported by substantial evidence and, if so, whether the findings support the conclusions of law. *J.E. Dunn Nw., Inc. v. Dep't of Labor & Indus.*, 139 Wn. App. 35, 42, 156 P.3d 250 (2007). Substantial evidence is "evidence 'in sufficient quantum to persuade a fair-minded person of the truth of the declared premise.' " *J.E. Dunn Nw.*, 139 Wn. App. at 43, 156 P.3d 250 (quoting *Holland v. Boeing Co.*, 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978)).

We do not reweigh the evidence on appeal. *Potelco, Inc.*[,194 Wn. App. at 434]. In determining whether substantial evidence supports [the Board's] findings, we view the evidence in the light most favorable to the party that prevailed before the [Board]. *Potelco*, 194 Wn. App. at 434, 377 P.3d 251. Unchallenged findings of fact are verities on appeal. *Mid Mountain Contractors, Inc. v. Dep't of Labor & Indus.*, 136 Wn. App. 1, 4, 146 P.3d 1212 (2006). If substantial evidence supports the findings of fact, we decide if those findings support the [Board's] conclusions of law. *Potelco*, 194 Wn. App. at 434, 377 P.3d 251.

*Potelco, Inc. v. Dep't of Labor & Indus.*, 7 Wn. App. 2d 236, 243-44, 433 P.3d 513 (2018).

---

[10] Former WAC 296-32-220 provided, in part:
(10) Power exposures.
(a) The employer shall ensure that no employee approaches or takes any conductive object closer to any electrically energized overhead power lines and parts than prescribed in Table 1 unless:
(i) The employee is insulated or guarded from the energized parts (insulating gloves rated for the voltage involved shall be considered adequate insulation), or
(ii) The energized parts are insulated or guarded from the employee and any other conductive object at a different potential, or
(iii) The power conductors and equipment are deenergized and grounded.

B. SUPERVISOR FINDING

The Board found that Nelson was a supervisor. SEFNCO argues that the evidence did not support this finding because Nelson did not have the authority to hire or fire workers, set wages, or approve vacation. We disagree.

An employee does not have to hold the official title of foreman or supervisor to be considered a supervisor for the purposes of imputing knowledge onto the employer. *See Mountain States Contractors, LLC v. Perez*, 825 F.3d 274, 284-85 (6th Cir. 2016).[11] It is sufficient that the employee had significant control over the actual work in practice and the ability to stop work when faced with clear safety hazards. *See id.*

Here, it was undisputed that Nelson was in charge of the work being done and that he had the ability to stop this work if the team encountered any safety hazards. Lundell, Julian, Wallace, and McBride testified that Nelson was in charge on the job site, that it was his job to direct the crew doing the work, that he was responsible for identifying hazards, and that he could terminate the work if he discovered any hazards. This testimony is substantial evidence that Nelson was acting as a supervisor and supports the Board's finding. Accordingly, this argument fails.

---

[11] Federal decisions interpreting the federal Occupational Safety and Health Administration Act, 29 U.S.C. §§ 651-678, may inform us when interpreting WISHA. *Shimmick Constr. Co, Inc. v. Dep't of Labor & Indus.*, 12 Wn. App. 2d 770, 778, 460 P.3d 192 (2020).

C. CONSTRUCTIVE KNOWLEDGE

To establish a prima facie case of a serious WISHA safety violation, the DLI is required

to prove that

(1) the cited standard applies, (2) the requirements of the standard were not met, (3) employees were exposed to[,] or had access to[,] the violative condition, (4) *the employer knew or through the exercise of reasonable diligence could have known of the violative condition*, and (5) there is a substantial probability that death or serious physical harm could result from the violative condition.

*Ostrom Mushroom Farm Co. v. Dep't of Labor & Indus.*, 13 Wn. App. 2d 262, 272, 463 P.3d 149

(2020); *see also* RCW 49.17.180(7).[12]

SEFNCO argues that the Board's finding that SEFNCO had constructive knowledge of the

violative condition was not supported by substantial evidence. We disagree.[13]

Again, to establish a prima facie case of a serious WISHA safety violation, the DLI is

required to prove, in part, that "the employer knew or through the exercise of reasonable diligence

could have known of the violative condition." *Ostrom Mushroom Farm*, 13 Wn. App. 2d at 272.

" 'Reasonable diligence' includes the obligation of an employer to inspect the work site, anticipate

---

[12] RCW 49.17.180(7) provides:
> For the purposes of this section, a serious violation shall be deemed to exist in a workplace if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such workplace, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

At the time of the incident, this subsection was numbered as subsection (6). *See* former RCW 49.17.180(6) (2010). Because the content of the subsection has not changed, we cite to the current version of the statute.

[13] SEFNCO also argues that the DLI failed to establish that SEFNCO had actual knowledge of the violative condition. But as SEFNCO acknowledges, the Board did not find that the DLI had established actual knowledge of the violative condition.

hazards that employees may be exposed to, and take measures to prevent the occurrence of a violative condition." *Bayley Constr. v. Dep't of Labor & Indus.*, 10 Wn. App. 2d 768, 783, 450 P.3d 647 (2019) (quoting *Erection Co., Inc. v. Dep't of Labor & Indus.*, 160 Wn. App. 194, 206-07, 248 P.3d 1085 (2011)).

> Constructive knowledge may be proved through evidence that a violation was in plain view. Such knowledge is established where the violation was 'readily observable or in a conspicuous location in the area of the employer's crews.' Moreover, when a supervisor has actual or constructive knowledge of a safety violation, such knowledge can be imputed to the employer.

*Potelco*, 194 Wn. App. at 439-40. (internal citations omitted) (quoting *Erection Co.*, 160 Wn. App. at 207); *see also Bayley Constr.*, 10 Wn. App. 2d at 783. Notably, "the applicable standard here is whether [the employer] knew or [c]ould have known of the violative condition—*not* whether the behavior that led to the violation was *foreseeable*." *Potelco*, 194 Wn. App. at 440 (emphasis altered).

Although not expressly designated as a finding of fact or conclusion of law, the discussion section of the Board's decision contains a constructive knowledge finding:

> Constructive knowledge comes from the view of the project prior to the commencement of work. Mr. Nelson took a photograph from the first pole and spoke with his supervisor about ground clearance, with it being known that the trees would have to be trimmed in order to string the new line. Mr. Nelson could have performed all of his necessary work outside the MAD, but with this tree situation it *was foreseeable* that the lasher could become tangled in the limbs and become necessary that the boom truck with its bucket be used to untangle the equipment. The witnesses all agree that it is known that the bucket will bounce and with the addition of the lasher's weight the bucket can bounce more. This is what occurred to Mr. Nelson and caused the violation with electrical contact within the MAD.

CP at 52 (emphasis added).

The Board's application of foreseeability standard when determining whether SEFNCO had constructive knowledge of the violative condition was error. To establish constructive

13

knowledge, the DLI was not required to prove that the behavior that caused the violation was foreseeable. *Potelco*, 194 Wn. App. at 440. Rather, it was required to show that SEFNCO, with the exercise of reasonable diligence, knew or could have known of the violative condition, here that Nelson was conducting his work in a way that risked violating the MAD and coming too close to the energized line. *Id.* But we can still affirm the Board if substantial evidence supports the constructive knowledge finding under the proper standard. *Erection Co.*, 160 Wn. App. at 205.

The employer has constructive knowledge if, had it exercised reasonable diligence, it could have known of the violative condition. *Id.* " 'Reasonable diligence' includes the obligation of an employer to . . . anticipate hazards that employees may be exposed to, and take measures to prevent the occurrence of a violative condition." *Bayley Const.*, 10 Wn. App. 2d at 783. And, as previously noted, "when a supervisor has actual or constructive knowledge of a safety violation, such knowledge can be imputed to the employer." *Potelco*, 194 Wn. App. at 440. Nelson was a supervisor. His constructive knowledge of a violative condition could be imputed to SEFNCO.

Nelson's proximity to the energized line combined with the bucket's bouncing created the violative condition; with the exercise of reasonable diligence, he should have anticipated this hazard and taken measures to prevent the occurrence of this condition. The testimony established that "[a]nybody who works in a bucket knows that it bounces." CP at 346. A reasonable person would know that if the weight of the lasher and cable was suddenly removed from the bucket, the bucket would bounce. Further, Nelson testified that he "didn't realize how far [he] had boomed up," and was therefore unaware of how close to the charged lines he was, while trying to extricate the lasher. *Id.* at 266.

Taking this evidence in the light most favorable to the DLI, Nelson, with the exercise of reasonable diligence, could have known how close to the energized lines he was, could have anticipated that the bucket would bounce into the MAD once the lasher was released, and thus could have anticipated the existence of a violative condition and should have taken measures to prevent the violative condition. Thus, the Board's constructive knowledge element is supported by substantial evidence.

D. UNPREVENTABLE EMPLOYEE MISCONDUCT DEFENSE

SEFNCO argues that the evidence did not support the Board's conclusion that SEFNCO failed to establish its unpreventable employee misconduct defense. The Board's findings are insufficient to allow for our review of this issue.

RCW 49.17.120(5)(a) provides,

No citation may be issued under this section if there is unpreventable employee misconduct that led to the violation, but the employer must show the existence of:
(i) A thorough safety program, including work rules, training, and equipment designed to prevent the violation;
(ii) Adequate communication of these rules to employees;
(iii) Steps to discover and correct violations of its safety rules; and
(iv) Effective enforcement of its safety program as written in practice and not just in theory.

Proof of this defense is "more rigorous" and more difficult when a supervisor is involved in the violation because a supervisor's involvement in the violation "raises an inference of lax enforcement and/or communication of the employer's safety policy." *Potelco*, 194 Wn. App. at 437. But a supervisor's participation in or failure to enforce a safety rule does not preclude the defense of unpreventable employee misconduct, it merely "weighs against it." *Id.*

"[F]indings must be made on all material issues in order to inform the appellate court as to 'what questions were decided by the trial court, and the manner in which they were decided' "

*Federal Signal Corp. v. Safety Factors, Inc.*, 125 Wn.2d 413, 422, 886 P.2d 172 (1994) (internal quotation marks omitted) (quoting *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 707, 592 P.2d 631 (1979)). In the absence of findings on all material issues, the remedy is not for us make our own findings, but, rather, to remand the matter to the Board to make the necessary factual determinations and to determine whether SEFNCO's unpreventable employee misconduct defense applies. *See id.* at 444-45.

The Board's decision states that the Board did "not believe that this defense is applicable to SEFNCO in this case because of Mr. Nelson's supervisory tasks and the facts presented." CP at 52. But the only finding of fact relevant to this defense was the finding that Nelson was a supervisor at the time of the incident. Although the Board's references to *Joranda Roofing 1* and *Greater American Construction* suggest that the Board understood that Nelson's supervisory status did not alone preclude this defense, nothing in the Board's decision addressed any of the statutory elements of the defense. Because Nelson's supervisory status is not dispositive, the statutory elements are clearly material to whether the defense applies. Without additional findings related to the elements of the defense, we cannot determine whether the Board's conclusion that the defense did not apply was supported by the evidence. Accordingly, we remand this matter back to the Board to make the necessary factual determinations and to determine whether SEFNCO's unpreventable employee misconduct defense applies. *See Federal Signal*, 125 Wn.2d at 423, 444-45.

## II. GENERAL VIOLATION: FIRST AID TRAINING

SEFNCO argues that the DLI failed to establish the general violation. SEFNCO contends that the DLI failed to prove that James was required to have first aid training under former WAC 296-32-230(4)(c). We disagree.

The resolution of this issue requires us to interpret former WAC 296-32-230. We review WAC regulations de novo with the goal of determining and giving effect to the intent of the regulation. *Erection Co.*, 160 Wn. App. at 201; *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

"If an administrative rule or regulation is clear on its face, its meaning is to be derived from the plain language of the provision alone." *Dep't of Licensing v. Cannon*, 147 Wn.2d 41, 55, 50 P.3d 627 (2002). We "will neither read matters into a [regulation] that are not there nor modify a [regulation] by construction." *Rushing v. ALCOA, Inc.*, 125 Wn. App. 837, 840, 105 P.3d 996 (2005).

> Former WAC 296-32-230, provided in part,
>
> **Training.** (1) Employers shall provide training in the various precautions and safe practices described in this section and *shall insure that employees do not engage in the activities to which this chapter applies until such employees have received proper training in the various precautions and safe practices required by this section. . . .*
>     (2) Where training is required, it shall consist of on-the-job training or classroom-type training or a combination of both.
> . . . .
>     (4) Such training shall, *where appropriate*, include the following subjects:
>     (a) Recognition and avoidance of dangers relating to encounters with harmful· substances, and animal, insect, or plant life.
>     (b) Procedures to be followed in emergency situations, and
>     (c) First-aid training, including instruction in artificial respiration.

(Emphasis added).

SEFNCO contends that former WAC 296-32-230(4)(c) required first aid training only "where appropriate" and that first aid training was not "appropriate" here because there was no evidence that James was required at the job site and, therefore, "there could be no reliance on his first-aid skills in the event of an accident." Br. of Appellant at 36. But the plain language of the rule states that employees engaging in activities covered by this chapter must have the required training, and we will not read an additional requirement into the rule that is not there. Former WAC 296-32-230(1); *Rushing*, 125 Wn. App. at 840. Regardless of whether James was required at this job site, there is no dispute that he was there, that he was engaging in work covered by these rules, and that he had not yet received his first aid training. Accordingly, this argument fails.

SEFNCO further argues that the DLI did not prove that all workers at a site, especially trainees, must be trained. The plain language of the rule states that it applies to employees engaging in the type of work in which James was engaging. The rule does not say that only some of the employees at the site must be trained; nor does it differentiate between trainees, probationary employees, or permanent employees. Again, we will not read language into a rule that is not there. *Rushing*, 125 Wn. App. at 840. Accordingly, this argument fails.

Finally, SEFNCO argues that the DLI failed to prove that first aid training was "appropriate" because there was no proof that the job site was far from medical care. Br. of Appellant at 36. The rule does not state that first aid training is required only when the employees are working far from medical care, and we will not read such a requirement into the rule. *Rushing*, 125 Wn. App. at 840. The need for emergency care could be instantaneous, so it is irrelevant how far away medical assistance is located. Again, this argument fails. SEFNCO does not show that

No. 55458-5-II

the Board erred when it concluded that SEFNCO had violated former WAC 296-32-230(4)(c). Accordingly, we affirm the citation for this violation.

CONCLUSION

We hold that (1) substantial evidence supports the finding that Nelson was a supervisor, (2) substantial evidence supports the Board's constructive knowledge finding, (3) the Board's findings are inadequate to allow review of its conclusion that the unpreventable employee misconduct defense did not apply, and (4) SEFNCO's argument that the DLI failed to prove that James was required to have first aid training under former WAC 296-32-230(4)(c) has no merit. Accordingly, we remand this matter to the Board to make the necessary factual determinations and to determine whether SEFNCO's unpreventable employee misconduct defense applies. We otherwise affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BASSETT, J.P.T.

I concur:

PRICE, J.

19

MAXA, J. (dissenting in part) – To establish a serious violation of the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, the Department of Labor and Industries (DLI) must prove that "the employer knew or through the exercise of reasonable diligence could have known of the violative condition." *Ostrom Mushroom Farm Co. v. Dep't of Labor & Indus.*, 13 Wn. App. 2d 262, 272, 463 P.3d 149 (2020). This requirement necessarily means that the violative condition must exist *before* an accident occurs. An employer cannot have actual or constructive knowledge of a violative condition that does not yet exist.

Here, the only violative condition occurred at the instant that Kenneth Nelson was injured. DLI has not alleged or proved that any safety violations existed until the bucket jumped and Nelson hit the energized power line. Therefore, SEFNCO (through its supervisor Nelson) did not know and could not have known of the violative condition before Nelson was injured. This means that DLI cannot satisfy the knowledge requirement.

The purpose of WISHA is to "assure, insofar as may reasonably be possible, safe and healthful working conditions for every [person] working in the state of Washington." RCW 49.17.010. Here, SEFNCO provided a safe workplace. Nelson's injury did not occur because SEFNCO knew or should have known of an existing violative condition and failed to correct that condition. A violative condition did not cause the accident. Instead, the accident caused the violative condition. The injury occurred because Nelson made a mistake that caused a violation of a safety regulation. SEFNCO could not have been aware of the violation until after it had occurred.

No. 55458-5-II

I would hold that DLI did not prove that SEFNCO had constructive knowledge of a violative condition before Nelson was injured. Therefore, I dissent regarding violation of former WAC 296-32-220(10)(a) (2007). I agree that DLI has shown a violation of the first aid training requirement, former WAC 296-32-230(4)(c) (2014).

_____
MAXA, P.J.

21